Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

*Attorneys for Plaintiff, the Putative*
*Class and Collective, and the Aggrieved*
*Employees and the State of California*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL SALINAS, on behalf of himself and the Class members, | Case No.: 1:21-cv-01140-JLT-CDB |
| Plaintiff, | Hon. Jennifer L. Thurston<br>Magistrate: Hon. Christopher D. Baker |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| NESTLÉ PURINA PETCARE COMPANY; | |
| Defendant. | |
| | Date: May 1, 2023 |
| | Time: 10:30 a.m. |
| | Ctrm.: 4, 7th Floor |
| | Filed: July 26, 2021<br>Trial Date: None Yet Set |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on May 1, 2023, at 10:30 a.m., before Magistrate Judge Christopher D. Baker of the United States District Court, Eastern District of California, Plaintiff Emmanuel Salinas ("Plaintiff") moves the Court for preliminary approval of the Joint Stipulation of Settlement (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn H. Cottrell) as to the Class, and approval of the Settlement as to the Collective. The Settlement globally resolves all of the claims in these actions on a class and collective basis. In particular, Plaintiff moves for orders:

(1) Granting preliminary approval of the Settlement Agreement as to the Class;

(2) Granting approval of the Settlement Agreement as to the Collective;

(3) Conditionally certifying the Class for settlement purposes;

(4) Approving the proposed schedule and procedure for completing the final approval process for the Settlement as to the Class, including setting the Final Approval Hearing;

(5) Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as Counsel for the Class and for the Collective;

(6) Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(7) Preliminarily appointing and approving Plaintiff Salinas as Class Representative for the Class and as Collective Representative for the Collective for purposes of the Settlement;

(8) Preliminarily appointing and approving ILYM Group, Inc. ("ILYM") as the Settlement Administrator for the Class and the Collective;

(9) Approving the Notice of Class Action and PAGA Representative Settlement ("Class Notice," attached as **Exhibit A** to the Settlement Agreement); and

(10) Authorizing the Settlement Administrator to mail and email the Class Notice to the Class and Collective;

(11) Approving the proposed schedule for completing the settlement process as to the Class and Collective:

| Event | Deadline |
|---|---|
| Deadline for Defendant to provide the Settlement Administrator with the Class List | Within ten (10) business days after entry of the Preliminary Approval Order. |
| Deadline for the Settlement Administrator to Mail the Class Notice to Settlement Class Members | Within fifteen (15) business days after the Settlement Administrator receives the Class List. |
| Deadline for Settlement Class Members to postmark requests to opt-out or file objections to the Settlement (the "Deadline Date") | Sixty (60) calendar days after the Settlement Administrator has postmarked the Class Notice for mailing to Settlement Class Members, or within fifteen (15) calendar days after the postmark of a Class Notice re-mailed to a corrected address for that Settlement Class Member, whichever is later. |
| Deadline for the Settlement Administrator to provide all counsel with a complete list of all Participating Class Members, of all Opt Outs, and of any written objections | No later than fifteen (15) calendar days before the Final Approval Hearing. |
| Deadline for filing of the Final Approval Motion | Approximately twenty-five (25) calendar days after the Deadline Date, as provided above. |
| Final Approval Hearing | As provided above. |
| Effective Date | The date on which the District Court's judgment approving the Joint Stipulation of Settlement becomes "Final." The judgement becomes "Final" when the period for appealing or seeking higher court review of the settlement approval and Final Class Judgement has expired, or that any filed appeals or other requests for review have been resolved without right to further appeals or review. |
| Deadline for Defendant to pay the Maximum Settlement Amount and Employer's Share of Taxes to the Settlement Administrator | Within ten (10) business days after the Effective Date. |
| Deadline for Settlement Administrator to make payments under the Settlement to Participating Individuals, the LWDA, Class Representative, Class Counsel, and itself | Within twenty (20) business days after the Effective Date. |
| Check-cashing deadline | One hundred eighty (180) calendar days from the date of issuance of the check. |
| Deadline for the Settlement Administrator to send a reminder notice to Participating Class Members and PAGA employees who have not cashed their checks | Within ninety (90) calendar days from the mailing of the check. |

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.*, Case No. 1:21-CV-01140-JLT-CDB

| Event | Deadline |
|---|---|
| Deadline for the Settlement Administrator to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable. |
| Deadline for the Settlement Administrator to remit uncashed check funds to the Unclaimed Property Fund | As soon as practicable. |
| Deadline for Plaintiff to file a Post-Distribution Accounting Report | As soon as practicable. |

(12)    Setting a final approval and fairness hearing.

Plaintiff brings this Motion pursuant to Fed. R. Civ. P. 23(e) and long-established precedent requiring Court approval for Fair Labor Standards Act settlements.[1] The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn H. Cottrell, and all other records, pleadings, and papers on file in the consolidated and related actions and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Preliminary Approval of Class Action Settlement with his moving papers.

Date: March 27, 2023                    Respectfully Submitted,


                                        /s/ Carolyn H. Cottrell
                                        Carolyn H. Cottrell
                                        Ori Edelstein
                                        Michelle S. Lim
                                        **SCHNEIDER WALLACE
                                        COTTRELL KONECKY LLP**
                                        2000 Powell Street, Suite 1400
                                        Emeryville, California 94608
                                        Telephone: (415) 421-7100
                                        Facsimile: (415) 421-7105

                                        *Attorneys for Plaintiff, the Putative
                                        Class and Collective, and the Aggrieved
                                        Employees and the State of California*

---

[1] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

1

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................12

II.    BACKGROUND ....................................................................................................12

    A.  Procedural Background..................................................................................12

    B.  Pre-Mediation Discovery. ............................................................................13

    C.  The Parties' Settlement Efforts. ...................................................................14

    D.  Factual Background. .....................................................................................15

III.   TERMS OF THE SETTLEMENT........................................................................16

    A.  Basic Terms of the Settlement. ....................................................................16

    B.  Class, Collective, and PAGA Employee Definitions....................................16

    C.  Allocation and Awards. ................................................................................17

    D.  Scope of Release. .........................................................................................18

    E.  Settlement Administration. ...........................................................................19

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF
      THE SETTLEMENT AS TO THE CLASS AND APPROVAL OF THE
      SETTLEMENT AS TO THE COLLECTIVE ....................................................19

    A.  The Court Should Grant Preliminary Approval of the Settlement as to the Class. ...........19

    B.  The Class Meets the Requirements for Class Certification. .............................................20

        1.   The State Classes are Numerous and Ascertainable. ...................................................20

        2.   Plaintiff's Claims Raise Common Issues of Fact or Law. ...........................................21

        3.   Plaintiff's Claims are Typical of the Claims of the Class...........................................22

        4.   Plaintiff and Class Counsel Will Adequately Represent the Class.............................22

        5.   The Rule 23(b)(3) Requirements for Class Certification are also Met. ......................22

    C.  The Settlement Should be Preliminarily Approved as to the Class and Approved
        as to the Collective Because it is Fair, Reasonable, and Adequate..................................23

1.  The Terms of the Settlement are Fair, Reasonable, and Adequate. ...........................24

2.  The Parties Agreed to a Fair and Equitable Distribution of the Settlement
    Proceeds Tailored to the Respective Claims of the Classes and Collective. ...............27

3.  The Extensive Discovery in this Action Enabled the Parties to Make Informed
    Decisions Regarding Settlement. .................................................................................28

4.  Litigating the Action Not Only Would Delay Recovery, but Would be
    Expensive, Time Consuming, and Involve Substantial Risk. .....................................28

5.  The Settlement is the Product of Informed, Non-collusive, and Arm's Length
    Negotiations Between Experienced Counsel. ..............................................................31

6.  The Class Representative Enhancement Payment is Reasonable and the Class
    Representative Has Adequately Represented the Class. ...............................................31

7.  The Requested Attorneys' Fees and Costs are Reasonable and Plaintiff's
    Counsel Have Adequately Represented the Class. ......................................................32

D.  Plaintiff and the Collective Members are Similarly Situated and the Settlement
    Should be Approved as to the Collective. ............................................................................33

E.  The Proposed Notice of Settlement is Reasonable. ..............................................................34

V.   CONCLUSION ............................................................................................................................36

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.,* Case No. 1:21-CV-01140-JLT-CDB

1

## TABLE OF AUTHORITIES

2

## CASES

3

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*,

4
 2018 U.S. Dist. LEXIS 20460, 2018 WL 746393 (E.D. Cal. 2018)....................................25

5

*Amaral v. Cintas*,

6
 163 Cal.App.4th 1157 (2008) ........................................................................................31

7

*Amchem Prod., Inc. v. Windsor*,

 521 U.S. 591 (1997)......................................................................................................23

8

9

*Carter v. Anderson Merchandisers, LP*,

 No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ................31

10

11

*Caudle v. Sprint/United Mgmt. Co.*,

 No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) ...........................20

12

13

*Chastain v. Cam*,

 No. 3:13-cv-01802-SI, 2016 U.S. Dist. LEXIS 52092 (D. Or. Apr. 19, 2016) ..................20

14

15

*Chindarah v. Pick Up Stix*,

 171 Cal.App.4th 796 (2009) .....................................................................................14, 27

16

17

*Churchill Village, L.L.C. v. Gen. Elec.*,

 361 F.3d 566 (9th Cir. 2004)....................................................................................24, 35

18

19

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,

 No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)...........................4, 34

20

*Eisen v. Carlisle & Jacquelin*,

 417 U.S. 156 (1974).......................................................................................................35

21

22

*Estrada v. Royalty Carpet Mills, Inc.*,

 76 Cal.App.5th 685 (2022) ............................................................................................30

23

24

*Franco v. Ruiz Food Prods., Inc.*,

 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 (E.D. Cal. 2012)..............................25

25

26

*Fry v. Hayt, Hayt & Landau*,

 198 F.R.D. 461 (E.D. Pa. 2000) ................................................................................21, 22

27

28

*Garcia v. Gordon Trucking*,

 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 (E.D. Cal. 2012)..............................25

*Greer v. Dick's Sporting Goods, Inc.*,
  No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS 168923 (E.D. Cal. Sep. 15, 2020)............32

*Guerrero v. United States Gypsum Co*.,
  No. 3:21-cv-01502-RBM-JLB, 2022 U.S. Dist. LEXIS 233930 (S.D. Cal. Dec. 30, 2022) ...............32

*Gutierrez v. Stericycle, Inc*.,
  No. LA CV15-08187 JAK (JEMx), 2019 U.S. Dist. LEXIS 237817 (C.D. Cal. Mar. 22, 2019) .......32

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................................20, 22, 24, 31

*Holmes v. Continental Can Co.*,
  706 F.2d 1144 (11th Cir. 1983) ........................................................................................27

*In re Activision Sec. Litig.*,
  723 F.Supp. 1373 (N.D. Cal. 1989) ..................................................................................32

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig*.,
  289 F.R.D. 526 (N.D. Cal. 2012), aff'd, No. 17-17533,
  2019 WL 4898684 (9th Cir. Oct. 4, 2019) .........................................................................29

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................................24

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .........................................................................................24

*Jones, et al. v. CertifiedSafety, Inc.*,
  Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020)....................................33

*Khanna v. Inter-Con Sec. Sys*.,
  No. CIV S-09-2214 KJM GGH, 2012 U.S. Dist. LEXIS 137651 (E.D. Cal. Sep. 24, 2012)............34

*Kilbourne v. Coca-Cola Co.*,
  No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)..........................29

*Kirkpatrick v. Ironwood Commc'ns, Inc*.,
  No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ................................20

*Lewis v. Starbucks Corp.*,
  No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008)................28

*Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG,
  2022 U.S. Dist. LEXIS 12812 (E.D. Cal. Jan. 22, 2022).................................................24

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.*, Case No. 1:21-CV-01140-JLT-CDB

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ...........................................................................4, 34

*Ma v. Covidien Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .................................................................24

*Monterrubio v. Best Buy Stores, L.P.*,
   291 F.R.D. 443 (E.D. Cal. 2013)..................................................................................28

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)......................................................................................................35

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...........................................................................23, 24, 27

*Otey v. CrowdFlower, Inc.*,
   No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) ....................4, 34

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................................................35

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*,
   No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011)..............................33

*Reyes v. CVS Pharmacy, Inc.*,
   No. 1:14-cv-00964-MJS, 2016 U.S. Dist. LEXIS 17180 (E.D. Cal. Feb. 10, 2016)........27

*Romero v. Producers Dairy Foods, Inc.*,
   235 F.R.D. 474 (E.D. Cal. 2006)..................................................................................21

*Schiller v. David's Bridal, Inc.*,
   2012 U.S. Dist. LEXIS 80776 (E.D. Cal. 2012) ..........................................................25

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ........................................................................................35

*Smith v. Family Video Movie Club, Inc.*,
   311 F.R.D. 469 (N.D. Ill. 2015).....................................................................................20

*Smith v. Lux Retail N. Am., Inc.*,
   No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562 (N.D. Cal. June 13, 2013)............26

*Smith v. Rae Venter Law Group*,
   29 Cal.4th 345 (2002) ...................................................................................................31

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.*, Case No. 1:21-CV-01140-JLT-CDB

*Soto, et al. v. O.C. Commc'ns, Inc., et al.*,
  Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) ....................................33

*Spann v. J.C. Penney Corp.*,
  211 F.Supp.3d 1244 (C.D. Cal. 2016) ...........................................................................32

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................................................31

*Stovall-Gusman v. W.W. Granger, Inc.*,
  2015 WL 3776765 (N.D. Cal. June 17, 2015) ...............................................................24

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010).................................................................................32

*Viceral v. Mistras Grp., Inc.*,
  Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ...................24

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................................32

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) .......................................................................................21

*Wesson v. Staples, LLC*,
  68 Cal.App.5th 746 (2021) .........................................................................................30

*Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
  No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331 (E.D. Cal. Aug. 21, 2019).............32

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................24, 31, 33

*York v. Starbucks Corp.*,
  No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ...............29

**STATUTES**

29 U.S.C. 216(b) ......................................................................................................34

29 U.S.C. 260 ..........................................................................................................30

8 C.C.R. 13520 ........................................................................................................31

Cal. Lab. Code § 203 ................................................................................................31

Cal. Lab. Code §§ 2698, *et seq.*........................................................................................13

Fed. R. Civ. P. 23 (a)................................................................................................20

Fed. R. Civ. P. 23(a)(1)............................................................................................21

Fed. R. Civ. P. 23(a)(2)............................................................................................21

Fed. R. Civ. P. 23(a)(3)............................................................................................22

Fed. R. Civ. P. 23(a)(4)............................................................................................22

Fed. R. Civ. P. 23(b)................................................................................................20

Fed. R. Civ. P. 23(b)(3)............................................................................20, 21, 22, 23

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................35

Fed. R. Civ. P. 23(e)........................................................................................4, 19, 24

Fed. R. Civ. P. 23(e)(2)......................................................................................20, 23

Fed. R. Civ. P. 23(h)................................................................................................35

Fed. R. Civ. P. 30(b)(6)......................................................................................14, 28

## TREATISES

Conte, Newberg on Class Actions (3rd Ed. 1992)...........................................35, 36

Manual for Complex Litigation (4th ed. 2004) ........................................20, 35, 36

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.,* Case No. 1:21-CV-01140-JLT-CDB

## I.   INTRODUCTION

After a year and a half of intensive litigation, including formal discovery, multiple mediations, exhaustive pre-mediation discovery and outreach, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of this class and collective action.[2] Plaintiff Emmanuel Salinas ("Plaintiff") now seeks preliminary approval of the Settlement as to the California Class and approval of the Settlement as to the Collective.

The Action is based on Defendant Nestlé Purina PetCare Company's ("Defendant") alleged violations of federal and state wage and hour laws, resulting in the underpayment of wages and the failure to provide compliant meal and rest periods to hundreds of workers employed by Defendant in any non-exempt hourly or non-exempt salaried California job position at any time during the time period from and including January 29, 2017, through and including February 5, 2023.

The Parties have resolved the claims of approximately 146 similarly situated non-exempt employees, for a total non-reversionary settlement of $3,000,000.00. Based on the terms of the Settlement, Class Members will receive on average $13,000 each. With this proposed Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement provides an excellent benefit to the Class and an efficient outcome in the face of expanding litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiff respectfully requests that the Court grant the requested approval.

## II.   BACKGROUND

### A.  Procedural Background.

On July 26, 2021, Plaintiff filed a Class Action Complaint in this Court against Nestlé Purina PetCare Company and Nestlé USA, Inc. alleging violations under California wage and hour laws on behalf of a putative California Class. ECF 1; Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Cottrell Decl."), ¶ 8. On September 8, 2021, Plaintiff filed a complaint in the Alameda Superior Court against Nestlé Purina PetCare Company and Nestlé USA, Inc. as Case No. 21CV00012 ("State Action"). Cottrell Decl., ¶ 9. The State Action

---

[2] The Joint Stipulation of Settlement and Release ("Settlement") is attached as **Exhibit 1** to the accompanying Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Cottrell Decl.").

1  alleged claims under the Private Attorneys' General Act, Cal. Lab. Code §§ 2698, *et seq.* ("PAGA"). *Id.*
2  On June 3, 2022, the Court granted the parties' stipulation to dismiss Nestlé USA, Inc. without
3  prejudice, leaving Nestlé Purina PetCare Company as the sole defendant. *Id.*, ¶ 10.

4      Pursuant to the Settlement, the Parties agreed  to dismiss the State Action and stipulated to amend
5  the complaint in this action to add the PAGA claims and the additional claims released under the
6  Settlement. Settlement, ¶ XV; Cottrell Decl., ¶¶ 12-14. On March 16, 2023, the Parties filed their
7  stipulation for leave to amend the complaint, which was granted on March 23, 2023. ECF 48-49. The
8  FAC, filed on March 23, 2023, alleges that Defendant violated the Fair Labor Standards Act ("FLSA")
9  and California wage and hour laws by failing to pay non-exempt employees their earned wages, failing
10 to provide and track legally compliant meal periods, and failing to provide legally compliant rest
11 periods. ECF 50. Pursuant to the Settlement, Plaintiff will dismiss the State Action without prejudice
12 immediately following the filing of the FAC. Settlement, ¶ XV.

13              **B.  Pre-Mediation Discovery.**

14      On May 4, 2022, Plaintiff propounded written discovery requests on Defendant, including
15 Special Interrogatories and Requests for Production of Documents, which Defendant responded to on
16 June 30, 2022. Cottrell Decl., ¶ 19. Plaintiff propounded similar written discovery requests on
17 Defendant in the State Action. *Id.,* ¶ 20. Through formal and informal discovery, Defendant produced
18 over 4,240 documents, which include a 20% sampling of contact information, pay records, and time
19 records for putative Class members; general policies; and job descriptions. *Id.*, ¶¶ 21-22. Defendant
20 further provided class-wide figures, including the total number of putative Class members, separated
21 putative Class members, putative Class members who signed a $1,500 release (as discussed further
22 below), as well as their associated workweeks and pay periods. *Id.*, ¶ 22. Plaintiff's counsel completed
23 an exhaustive review of the documents and information provided by Defendant, and used the
24 information and data to prepare for mediation. *Id.*

25      Plaintiff additionally completed extensive outreach with putative Class members, including
26 dozens of in-depth interviews, which covered topics including dates and locations of work, hours of
27 work, pre-shift and post-shift off the clock work, potential timekeeping and rounding issues, meal and
28 rest breaks, and Defendant's *Pick-Up Stix* settlements, which are discussed further below. *See id.*, ¶ 25;

*see also, Chindarah v. Pick Up Stix,* 171 Cal.App.4th 796 (2009). Such interviews covered a gamut of job titles, including those in Defendant's departments of quality assurance, packaging, and shipping/receiving. Cottrell Decl., ¶ 25. Multiple putative Class members further provided additional documents to Plaintiff's counsel, which Plaintiff's counsel methodically reviewed in advance of mediation. *Id*. Through this process, Plaintiff garnered substantial factual background regarding the alleged violations, which Plaintiff's counsel utilized to build their case and to assess Defendant's potential exposure in this Action. *Id*.

### C. The Parties' Settlement Efforts.

On April 19, 2022, the Parties participated in a full-day, early mediation before respected wage and hour mediator, Scott Slater Markus. *Id*., ¶ 15. The mediation was ultimately unsuccessful, and the Parties continued pursuing formal discovery. *Id*. Following that mediation, Defendant engaged in a campaign of acquiring individual *Pick-Up Stix* settlements with putative Class members. *Id*., ¶ 16. These individual releases purported to provide Defendant releases of all claims in this Action along with a Section 1542 waiver, in exchange for $1,500 minus taxes and other wage withholdings. *Id.* A total of 54 such individual releases were executed, for a total monetary settlement of $81,000. *Id.*

On November 4, 2022, the Parties participated in a second mediation with mediator Deborah Crandall Saxe, another well-respected wage and hour mediator. *Id*., ¶ 17. The case did not settle that day; however, the Parties accepted a mediator's proposal soon thereafter, and executed a memorandum of understanding regarding the major terms of the Parties' agreement on December 5, 2022. *Id*., ¶¶ 17-18. Following the Parties' agreement, the Parties engaged in additional confirmatory discovery, which included: the contact information of putative Class members, exemplars and documents regarding putative Class members who were paid salaries but classified by Defendant as non-exempt, and the Rule 30(b)(6) deposition of Chord Fonvielle, the Human Resources Manager for Defendant's Maricopa, California facility, which took place on February 8, 2023. *Id*., ¶¶ 23-24.

Plaintiff's counsel extensively reviewed this information and documents to confirm the exposure analysis it had conducted for purposes of mediation were accurate and to confirm that the Settlement is fair, adequate, and reasonable. *Id*., ¶ 26. The Parties met and conferred over detailed terms of the Settlement, and executed the Settlement on March 27, 2023. *Id*., ¶ 27.

### D.  Factual Background.

Defendant produces and markets pet food, treats, and cat litters. FAC, ¶ 12. Defendant employs and/or employed non-exempt employees, including Plaintiff and the putative class members in Maricopa, California. *Id.*, ¶¶ 12-13. Such putative Class members mine, manufacture, package, and ship Defendant's products, and in particular, kitty litter for Defendant's customers. Cottrell Decl., ¶ 24.a. Putative Class members share common duties, including operating and working in a safe manner, which includes donning appropriate personal protective equipment ("PPE"). *Id.*, ¶ 24.b. All putative Class members undergo the same training in California, and work in the same Maricopa, California facility. *Id.,* ¶ 24.c All putative Class members are subject to the same handbook, which includes Defendant's written policies and practices. *Id.,* ¶ 24.d.

Defendant routinely requires Plaintiff and putative Class members to perform substantial work off-the-clock. FAC, ¶¶ 16-22. Up until August 2022, during which Defendant initiated a change in policy, likely in response to Plaintiff's claims regarding this issue, Defendant required hourly, non-exempt employees to arrive at work up to 15 minutes before their shifts were scheduled to start, during which such employees were expected to don their PPE, prepare their workstations, and after March 2020, undergo a temperature check. *See id.,* ¶¶ 17, 19; Cottrell Decl., ¶ 24.e. Although such employees were expected to clock in during this time, Defendant automatically changed their time punches to their scheduled start time to avoid paying for this work time. Cottrell Decl., ¶ 24.e.

Further, Defendant's timekeeping system, Kronos, was subject to a ransomware attack in December 2021 to the beginning of 2022, during which Defendant reverted to the use of paper time sheets for several months. FAC, ¶ 23; Cottrell Decl., ¶ 24.f. This resulted in unpaid wages, which were not reconciled following the repair of the Kronos breach. FAC, ¶ 23.

Defendant also, fails to track and provide Plaintiff and putative Class members with compliant meal breaks. *Id.*, ¶¶ 24-30. Indeed, not until around April 2021 did Defendant even begin tracking meal periods at all.  Cottrell Decl., ¶ 24.g.  Defendant's policies, practices, and procedures require Plaintiff and putative Class members to routinely skip their meal breaks, and Defendant further commended Plaintiff and putative Class members for working during meal and rest breaks. FAC, ¶¶ 24-29. While Defendant pays putative Class members for working during their 30-minute meal periods, Defendant

1    does not provide putative Class members with the requisite premium pay for noncompliant meal and

2    rest periods (i.e., a full 1 hour of pay at the regular rate). FAC, ¶ 24; *see also,* Cottrell Decl., ¶ 24.h.

3    **III.  TERMS OF THE SETTLEMENT**

4        **A.  Basic Terms of the Settlement.**

5            Defendant has agreed to pay a non-reversionary, Maximum Settlement Amount of $3,000,000

6    to settle all aspects of this Action. Settlement, ¶ IV. This Maximum Settlement Amount is subject to an

7    escalator clause to address any material increase to the estimated workweek total for the Class.[3]

8    Pursuant to the Court's approval, the Maximum Settlement Amount shall be used to pay: Class

9    Counsel's attorneys' fees (not to exceed $1,050,000), Class Counsel's attorneys' costs (not to exceed

10   $30,000), costs of settlement administration (estimated at $10,500), Class Representative Enhancement

11   Fees to Plaintiff (not to exceed $7,500), and payments under the PAGA ($100,000).[4] *Id.*, ¶¶ IV, VI, VII,

12   VIII. Defendant will separately pay the employer's share of taxes of Class Members' settlement

13   payments. *Id.,* ¶¶ IV, X.

14           The Maximum Settlement Amount less the Class Representative Enhancement Fees, Attorneys'

15   Fees and Costs, Settlement Administration Costs, and the PAGA Settlement Amount is the "Net

16   Settlement Amount," which will be available to pay Participating Class Members – i.e., Settlement

17   Class Members who do not exclude themselves from the Settlement. *Id.*, ¶¶ II.12, IX. The Net

18   Settlement Amount, plus the PAGA Settlement Amount allocated to the PAGA Employees (i.e.,

19   $25,000), is currently estimated to be $1,827,450. Cottrell Decl., ¶¶ 28-29, 31; *see also,* Settlement, ¶¶

20   II.12, VIII, IX.1. This amount does not include the $81,000 in *Pick-Up Stix* releases some Class

21   Members have already received, but are credited in the Settlement. Cottrell Decl*.,* ¶ 31; *see also,*

22   Settlement, ¶ IX.2.a. The total amount of the individual releases already paid to such Class Members,

23   in addition to the calculated Net Settlement Amount, is $1,908,450. Cottrell Decl., ¶ 31.

24           **B.  Class, Collective, and PAGA Employee Definitions.**

25

---

26   [3] The Settlement is based on approximately 25,075 workweeks worked by Class Members during the Class
     Period, but if the actual number of pay periods exceed 29,583, the Maximum Settlement Amount will be
27   increased by the same number of percentage points above 10% by which the actual number of pay periods
     exceeds 25,075. Settlement, ¶ IV.
     [4] Settlement, ¶ VIII. The parties have agreed that the PAGA Settlement Amount of $100,000 will be allocated
28   to the resolution of the PAGA claims. Pursuant to PAGA, 75%, or $75,000, of the PAGA Settlement Amount
     will be paid to the California Labor Workforce and Development Agency ("LWDA"), and 25%, or $25,000, of
     the PAGA Settlement Amount shall be distributed to PAGA Employees. *Id.*

1    The Settlement Class is defined as all persons employed by Defendant in any non-exempt hourly

2   or non-exempt salaried California job position at any time during the time period from and including

3   January 29, 2017, through and including February 5, 2023 (the "Class Period"). Settlement, ¶¶ II.4, II.6,

4   II.10, II.24, III. There are approximately 146 Class members. Cottrell Decl., ¶ 30.

5    Participating Class Members who cash, deposit, or otherwise negotiate their individual checks

6   awarded under the Settlement will also be deemed to have "opted in" to the Collective of the Action

7   under the FLSA. Settlement, ¶¶ II.16, XII.

8    Settlement Class Members – including those who exclude themselves from the Rule 23 portion

9   of the Settlement – during any part of the time period from and including January 29, 2020, through

10  and including February 5, 2023 (the "PAGA Period"), are also considered PAGA Employees.

11  Settlement, ¶¶ II.14, II.15, VIII. There are approximately 105 PAGA Employees. Cottrell Decl., ¶ 30.

12          **C. Allocation and Awards.**

13    From the Net Settlement Amount, each Participating Class Member will receive a "Class

14  Member Allocation Amount," which includes *pro rata* shares called a "First Pro Rata Allocation

15  Amount" and a "Second Pro Rata Allocation Amount." Settlement, ¶ IX.2.

16    The First Pro Rata Allocation Amount will be calculated based on the number of pay periods

17  worked by a Participating Class Member during the Class Period, divided by the aggregate number of

18  pay periods worked by all Participating Class Members during the Class Period, then multiplied by the

19  Net Settlement Amount. *Id.,* ¶ IX.2. To avoid providing those Participating Class Members who

20  previously signed releases in exchange for $1,500 with a double recovery, each such Participating Class

21  Member's First Pro Rata Allocation Amount will be reduced by $1,500, and will total $0 if the resulting

22  amount is calculated to be $0 or less. *See id.*

23    The Second Pro Rata Allocation Amount will be calculated based on the number of pay periods

24  worked by a Participating Class Member during the Class Period, divided by the aggregate number of

25  pay periods worked by all Participating Class Members during the Class Period, then multiplied by the

26  Net Settlement Amount less the total First Pro Rata Allocation Amount calculated for all Participating

27  Class Members. *Id.,* ¶ IX.2.b.

28    Each PAGA Employee will receive a share of the PAGA Portion ("Individual PAGA Payment")

1  calculated based on the number of pay periods worked by the PAGA Employee during the PAGA Period,

2  divided by the aggregate number of pay periods worked by all PAGA Employees during the PAGA

3  Period, and then multiplied by the PAGA Portion (i.e., $25,000). *Id.,* ¶ IX.3. Participating Class

4  Members who are also PAGA Employees will receive their Individual PAGA Payments in addition to

5  their Class Member Allocation Amount. *Id.* PAGA Employees who are also Settlement Class Members

6  but opt out, and therefore are not Participating Class Members, will receive only their Individual PAGA

7  Payments. *Id.*

8      Participating Class Members and PAGA Employees will have 180 days to cash their check. *Id.*,

9  ¶ IX.10. The Settlement Administrator will send a reminder notice to any PAGA Employee or

10  Participating Class Member who has not cashed his or her checks within 90 days after such checks have

11  been mailed. *Id.*, ¶ IX.11. For any check not cashed after 180 days, the Settlement Administrator will

12  stop payment on such check and remit the funds to the Unclaimed Property Fund maintained by the

13  State Controller's Office in the name of the Participating Class Member and/or PAGA Employee who

14  failed to cash his or her check. *Id.,* ¶ IX.10; Cottrell Decl., ¶ 33.

15          **D.  Scope of Release.**

16      Each Participating Class Member will release and discharge the Released Parties from the

17  Released Class Claims, which include all claims arising in whole or in part, for claims arising from

18  employment by Defendant during the Class Period with respect to wage and hour claims or claims

19  otherwise arising from the facts or legal theories alleged in this Action. Settlement, ¶¶ II.20, XII.

20  Participating Class Members who cash or otherwise negotiate their Class Member Allocation Amounts

21  will also be deemed to have released the Released Parties from claims and damages under the FLSA.

22  *Id.,* ¶ XII.

23      Each PAGA Employee releases and discharges the Released Parties on behalf of the LWDA from

24  all Labor Code or Wage Order violations under the PAGA arising during the PAGA Period, and which

25  derive from the Released Class Claims or could have been alleged under the PAGA in the Action. *Id.*

26  There is no right for PAGA Employees to opt out or otherwise exclude themselves from these Released

27  PAGA Claims. *Id.*

28      In partial consideration for the Class Representative Enhancement Fee, Plaintiff also agrees to a

general release. Settlement, ¶ XIII; *see also, id.,* ¶ V. Releases by Participating Class Members, PAGA Employees, and the Plaintiff, are tethered to the Effective Date. *Id.,* ¶¶ XII, XIII. The "Released Parties" include Defendant and its past or present partners, parents, subsidiaries, or affiliates, and their predecessor or successor entities; any joint employers, alter egos, integrated enterprises; and the past and present directors, officers, representatives, insurers, agents, shareholders, limited or general partners, members, lawyers, and employees of any of such individuals or entities. *Id.*, ¶ II.20.

### E.  Settlement Administration.

The parties have agreed to use ILYM Group, Inc. ("ILYM") as the Settlement Administrator. Settlement, ¶¶ II.23, VII. Class Counsel will apply to the District Court for an award of the ILYM's actual costs of not more than $10,050 to pay of costs for administration which will be paid from the Maximum Settlement Amount. *Id.*, ¶ VII. ILYM will send the Class Notice to Settlement Class Members and prepare and issue the checks to: Participating Class Members for their Class Member Allocation Amounts, PAGA Employees for their Individual PAGA Payment, Class Counsel for any awarded Attorneys' Fees and Costs, Plaintiff for any awarded Class Representative Enhancement Fee, and the LWDA for its portion of the PAGA Settlement Amount. *Id.* ILYM will also establish a Qualified Settlement Fund ("QSF") for purposes of distributing these amounts. *Id.*

ILYM will calculate, file, and remit all required tax returns to appropriate taxing and other governmental authorities, all amounts to be deducted or paid on account of the Class Member Allocation Amounts, including the employee's share of wage withholdings. *Id.* The Settlement Administrator will further set up a toll-free number and a dedicated email address for any settlement inquiries. *Id.*

### IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE CLASS AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE

### A.  The Court Should Grant Preliminary Approval of the Settlement as to the Class.

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is

1  presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action*

2  *Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed

3  to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

4        Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court

5  may grant certification for purposes of preliminary approval: (1) that the settlement class meets the

6  requirements for class certification if it has not yet been certified; and (2) that the settlement is fair,

7  reasonable, and adequate. Fed. R. Civ. P. 23 (a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below,

8  this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable,

9  and adequate in accordance with Rule 23(e)(2). Defendant does not oppose certification of the Class

10  for settlement purposes and agree to seek this Court's approval thereon. *See* Settlement, ¶¶ III, XII.

11  Accordingly, the Court should preliminarily approve the Settlement as to the Class.

12        **B.    The Class Meets the Requirements for Class Certification.**

13        A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members

14  individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or

15  defenses of the class representative are typical of the claims or defenses of the class; and (4) the person

16  representing the class is able to fairly and adequately protect the interests of all members of the class.

17  Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief

18  may only be maintained if "the court finds that the questions of law or fact common to class members

19  predominate over any questions affecting only individual members, and that a class action is superior

20  to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

21  23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees

22  who have suffered wage and hour violations under the wage and hour laws of California.[5] Likewise,

23  the Class meets all of these requirements.

24        **1.    The State Classes are Numerous and Ascertainable.**

---

25  [5] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at *7 (N.D. Cal. Dec.
    18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Kirkpatrick v.*

26  *Ironwood Commc'ns, Inc.,* No. C05-1428JLR, 2006 WL 2381797, at *14 (W.D. Wash. Aug. 16, 2006)
    (certifying Washington Rule 23 class in a case involving off-the-clock, overtime, and meal break violations under

27  Washington law); *Chastain v. Cam,* No. 3:13-cv-01802-SI, 2016 U.S. Dist. LEXIS 52092, at *29 (D. Or. Apr.
    19, 2016) (certifying Oregon Rule 23 class and denying FLSA decertification in a case asserting off-the-clock

28  and unpaid meal breaks); *Smith v. Family Video Movie Club, Inc.,* 311 F.R.D. 469, 483 (N.D. Ill. 2015)
    (certifying Illinois Rule 23 class in a case asserting overtime pay rates failed to include commission payments
    and off-the-clock for delivering bank deposits).

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 485 (E.D. Cal. 2006). Here, there are approximately 146 putative Class members who are readily identified from Defendant's payroll records, thereby rendering the class so large as to make joinder impracticable. *See* Cottrell Decl., ¶ 34.

### 2.    Plaintiff's Claims Raise Common Issues of Fact or Law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 467 (E.D. Pa. 2000)("*Fry*"). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Common questions of law and fact predominate here, satisfying Rule 23(a)(2) and (b)(3), as alleged in the Complaint. Defendant has uniform policies applicable to all Class members. Specifically, Defendant's uniform policies apply to all non-exempt employees, including: the requirement that all non-exempt employees use the Kronos timekeeping system, Defendant's policy of paying 30 minutes each day for meal breaks, Defendant's failure to track meal periods until April 2021, Defendant's policy of COVID-19 checks following March 2020, Defendant's policy of requiring employees to use written time sheets during the Kronos breach in late 2021 to early 2022, Defendant's policy that employees don PPE, and Defendant's policy of not providing off-duty meal periods or rest breaks. Cottrell Decl., ¶ 35. Plaintiff alleges that the wage and hour violations are in large measure borne of Defendant's standardized policies, practices, and procedures, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. These issues include: whether Defendant's practice prior to August 2022, of not paying employees for undergoing COVID-19 checks and donning PPE among other job duties, was improper; whether Defendant's failure to track meal breaks until April 2021 was improper; whether Defendant provided compliant meal and rest breaks; and whether Defendant's payment of 30 minutes each day were sufficient to satisfy Defendant's meal and rest break violations. *Id.* Because these questions can be resolved at the same juncture, Plaintiff contends the commonality

1   requirement is satisfied.

2   ### 3. Plaintiff's Claims are Typical of the Claims of the Class.

3   "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

4   members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's

5   claims are 'typical' if they are reasonably coextensive with those of absent class members; they need

6   not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff's claims are typical of those

7   of all other Class Members. They were subject to the alleged illegal policies and practices that form the

8   basis of the claims asserted in this case. Interviews with putative Class members and review of

9   timekeeping and payroll data further confirm that Plaintiff and other putative Class members were

10  subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. Cottrell

11  Decl., ¶ 36. Thus, the typicality requirement is also satisfied.

12  ### 4. Plaintiff and Class Counsel Will Adequately Represent the Class.

13  To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1)

14  that the putative named plaintiff has the ability and the incentive to represent the claims of the class

15  vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between

16  the individual's claims and those asserted on behalf of the class." *Fry,* 198 F.R.D. at 469. Plaintiff's

17  claims are in line with the claims of the Class, and Plaintiff's claims are not antagonistic to the claims

18  of Class Members. Cottrell Decl., ¶ 37. Plaintiff has prosecuted this case with the interests of the Class

19  Members in mind. *Id.* Moreover, Plaintiff's Counsel has extensive experience in class action and

20  employment litigation, including wage and hour class actions, and do not have any conflict with the

21  class. *Id.*, ¶¶ 5-7, 37.

22  ### 5. The Rule 23(b)(3) Requirements for Class Certification are also Met.

23  Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any

24  questions affecting only individual members" and that a class action is "superior to other available

25  methods for fairly and efficiently adjudicating the controversy."

26  Here, the common questions raised in this action predominate over any individualized questions

27  concerning the Class. Cottrell Decl., ¶ 38. Resolution of the claims hinges on the uniform policies and

28  practices of Defendant, rather than the treatment the putative Class Members experienced on an

1
2
3

individual level. *Id*. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendant's uniform policies, and would not require inquiries specific to individual class members.

4
5
6
7
8
9
10

Further, the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. *Id.*, ¶ 39. To determine whether the class approach is superior, courts are to consider: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

11
12
13
14
15
16
17
18

Here, the putative Class members do not have a strong interest in controlling their individual claims. The action involves over a hundred workers with similar, but relatively small, claims for monetary injury. If the putative Class Members proceeded individually, their many individual suits would require duplicative discovery and duplicative litigation, and each putative Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations.

19
20
21
22
23

The issues raised by the present case are much better handled collectively by way of a settlement. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Cottrell Decl., ¶ 40. Accordingly, class treatment is efficient and warranted for settlement purposes.

24

**C.    The Settlement Should be Preliminarily Approved as to the Class and Approved as to the Collective Because it is Fair, Reasonable, and Adequate.**

25
26
27
28

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("*Officers for Justice*"); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Before

1    making such a finding, the Court must consider whether (1) class representative and counsel have

2    adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided

3    for the class is adequate in light of: (a) the costs, risks, and delay of trial; (b) the effectiveness of any

4    proposed method of distributing relief to the class; (c) the terms of any proposed award of attorney's

5    fees; and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

6    "While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining

7    whether preliminary approval is warranted, doing so often proves useful given the role these factors

8    play in final approval determinations." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG,

9    2022 U.S. Dist. LEXIS 12812, at *6 (E.D. Cal. Jan. 22, 2022).

10    This analysis includes consideration of: (1) the strength of plaintiff's case; (2) the risk, expense,

11    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

12    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

13    stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

14    participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village,*

15    *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly,

16    courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-

17    length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6

18    (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly

19    where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

20    (9th Cir. 2008). In light of these factors, the Settlement is fair, reasonable, and adequate.

21    **1.   The Terms of the Settlement are Fair, Reasonable, and Adequate.**

22    In evaluating the fairness of a proposed settlement, courts compare the settlement amount with

23    the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec.*

24    *Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction

25    of the maximum potential recovery. *See, e.g., Officers for Justice,* 688 F.2d at 623.[6]

26

27    _____
[6] *See, e.g., Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct.
11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value); *Stovall-*

28    *Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net
figures are 'within the range of reasonableness'"); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D.
Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

Here, the negotiated non-reversionary Maximum Settlement Amount of $3,000,000.00, in addition to the $81,000 credited under the Settlement for prior Pick-Up Stix settlements, represents approximately 85% of the $3,625,283.75 total that Plaintiff calculated for core claims for unpaid meal and rest premiums and unpaid wages. Cottrell Decl., ¶ 49. When adding the calculated derivative penalties, this settlement amount represents approximately 61% of Defendant's total potential exposure of $5,050,460.81. *Id.* The Net PAGA Amount of $100,000.00 also represents 3.3% of the Maximum Settlement Amount, well within the PAGA settlements previously approved in this district and other California district courts.[7] *See id.*, ¶ 50.

Plaintiff's counsel based their exposure analysis and settlement negotiations on formal and informal discovery, a 20% sample of timekeeping records provided by Defendant, and dozens of extensive interviews with putative Class members. *Id.*, ¶ 45. Plaintiff's counsel obtained average rates of pay, which was approximately $25 for all putative Class members, which were then used in conjunction with amounts of unpaid time to determine estimated damages for off-the-clock violations. *Id.* Based on interview analysis and cross-checked with Defendant's data, Plaintiff applied a high-end, damage assumptions that each employee worked 1.33 hours off-the-clock per week prior to August 2022 (and 1 minute per day following August 2022), worked approximately 9.4 hours per shift and 5 shifts per week, was subject to noncompliant meal periods 53% of the time, and was subject to noncompliant rest periods 37% of the time. *Id.* Plaintiff's counsel further accounted for the paid meal and rest break premiums—approximately $20,489.86—and deducted this and 30 minutes at the calculated regular rate for each noncompliant meal period, given that Defendant paid putative Class members 30 minutes each shift for meal periods throughout the Class Period. *Id.*

Using these assumptions and further assuming that Plaintiff and the Class members would certify all of their claims and prevail at trial, Plaintiff's counsel calculated the total potential substantive exposure if Plaintiff fully prevailed on all of his claims at approximately $3,625,283.75 and the total

---

[7] *See, e.g., Ahmed v. Beverly Health & Rehab. Servs., Inc.*, 2018 U.S. Dist. LEXIS 20460, 2018 WL 746393, at *10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement); *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *35-36 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of the total settlement); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement); *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27% of the total settlement).

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina PetCare Company,* Case No. 1:21-CV-01140-JLT-CDB

exposure of $5,050,460.81. *Id.*, ¶ 46. This total exposure is further broken down as follows: approximately $1,227,367.95 for unpaid meal break premiums; approximately $1,198,150.55 for unpaid rest break premiums; approximately $1,199,765.26 for unpaid off-the-clock work at the overtime rate; approximately $182,500 for failure to maintain requisite records; approximately $584,000 for failure to provide accurate wage statements; approximately $299,224.56 for waiting time penalties; and approximately $1,316,160 for PAGA penalties.[8] *Id.*, ¶ 47.

These figures are based on Plaintiff's assessment of a best-case-scenario. To obtain such a result at trial, Plaintiff would have to, at the minimum: (1) withstand any motion to strike Plaintiff's PAGA claims for lack of manageability; (2) certify all claims and withstand any decertification motions; (3) prevail on the merits on all claims; (4) prove that Defendant acted knowingly or in bad faith; and (5) prove that all putative Class members experienced the violations at the levels described above for every shift. *Id.*, ¶ 48.

The Gross Settlement Amount is a negotiated amount that resulted only after over 3 months of substantial arm's-length negotiations following two, full-day mediation sessions with two well-respected mediators, and significant investigation and analysis by Plaintiff's counsel. *Id.*, ¶¶ 15-27, 44, 57-58. Plaintiff and his counsel considered the significant risks of continued litigation when considering the proposed Settlement. *Id.*, ¶ 51. These risks were front and center, particularly given the nature of the off-the-clock work, that the putative Class members work in different departments and are paid either salary or hourly, and certain putative Class members allegedly released their claims in this Action pursuant to *Pick-Up Stix* settlements, which could invariably complicate certification efforts and proving the claims on the merits. *Id.* In contrast, the Settlement will result in immediate and certain payment to Settlement Class members of meaningful amounts. *Id.*

**The average recovery is approximately $13,071 per Settlement Class Member**.[9] *Id.*, ¶ 52. This

---

[8] Given that courts decline to "stack" PAGA penalties for single substantive violations, Plaintiff assumed 1 PAGA violation per pay period, per PAGA Employee for purposes of its analysis. *See Smith v. Lux Retail N. Am., Inc.*, No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. June 13, 2013) ("For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted five (count them, five) separate labor code violations that could lead to statutory penalties. One is a penalty for failure to pay overtime at the appropriate rate []. Another is for denying employees minimum wage and overtime []. But is it plausible that we would really pile one penalty on another for a single substantive wrong?").

[9] The average provided here assumes all Settlement Class Members participate in the Settlement and that each member worked identical lengths of employment. Cottrell Decl., ¶ 52. This average was calculated based on the Net Settlement Amount (estimated at $1,802,450) plus the $25,000 allocated for payment to PAGA Employees

1   amount provides significant compensation to the Settlement Class Members, and the Settlement

2   provides an excellent recovery well within the reasonable standard when considering the difficulty and

3   risks presented by expanding and uncertain litigation. *Id.*, ¶¶ 53-54.

4       The final settlement amount takes into account the substantial risks inherent in any class action

5   wage-and hour case, as well as the procedural posture of the Actions and the specific defenses asserted

6   by Defendant, many of which are unique to this case. *See Officers for Justice*, 688 F.2d at 623. In light

7   of all of the risks, the settlement amount is fair, reasonable, and adequate.

8       **2.  The Parties Agreed to a Fair and Equitable Distribution of the Settlement
             Proceeds Tailored to the Respective Claims of the Classes and Collective.**

9       In an effort to ensure fairness, the Parties agreed to allocate the settlement proceeds amongst

10  Settlement Class Members in a manner that recognizes that amount of time that the particular individual

11  was employed by Defendant in the applicable limitations period. The allocation method, which is based

12  on the number of workweeks, will ensure that longer-tenured workers receive a greater recovery.

13  Moreover, for Settlement Class Members who were already compensated through separate *Pick-Up Stix*

14  settlements, such individuals' share of the Settlement will be reduced by the $1,500 individual

15  settlement they already received. Settlement, IX.2.a. The allocation was made to ensure that employees

16  are compensated in the most equitable manner. Cottrell Decl., ¶ 55. To the extent that any Class Member

17  opts in to the FLSA component of the Settlement, these workers will only receive a recovery based on

18  their workweeks as a Class Member for their work in California. *Id.*, ¶ 56. Such workers will not receive

19  a "double recovery." *Id.*

20      A class action settlement need not benefit all class members equally. *Holmes v. Continental Can*

21  *Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *cf. Reyes v. CVS Pharmacy, Inc.,* No. 1:14-cv-00964-MJS,

22  2016 U.S. Dist. LEXIS 17180, at *19-20 (E.D. Cal. Feb. 10, 2016) (noting equal distribution of

23  settlement to class members may be appropriate where plaintiffs face difficulties prosecuting their

24  individual claims). Rather, although disparities in the treatment of class and collective members may

25  raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by

26  showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148.

27

28  and the $81,000 in releases already paid to certain Class Members (totaling $1,908,450), divided by the total
    number of Settlement Class Members (i.e., 146). *Id.*

Plaintiff provides rational and legitimate bases for the allocation method here, and submits that it should be approved.

### 3. The Extensive Discovery in this Action Enabled the Parties to Make Informed Decisions Regarding Settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive formal and informal discovery, including thousands of pages of documents, a Rule 30(b)(6) deposition, and dozens of class interviews that enabled Plaintiff to assess the claims and potential defenses in this action. Cottrell Decl., ¶ 57. In addition, in reaching this Settlement, Plaintiff's counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. *Id*. Plaintiff's counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on Settlement Class Members' pay. *Id*. Ultimately, facilitated by well-respected mediators Scott Markus and Deborah Saxe, the Parties used this information to fairly resolve the litigation. *See Id*.

### 4. Litigating the Action Not Only Would Delay Recovery, but Would be Expensive, Time Consuming, and Involve Substantial Risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. *Id*., ¶ 58. If this Action were to go to trial(s) and through appeals as class, representative, and collective actions (which Defendant would vigorously oppose if this Settlement Agreement were not approved), Plaintiff's Counsel estimates that fees and costs would well exceed $2,000,000.00. *Id*.

Litigating the class, representative, and collective action claims would require substantial additional preparation and discovery. *Id.,* ¶ 59. Plaintiff would need to complete fact and expert discovery. This would include: (1) written discovery to and depositions of putative Class members; (2) depositions of Defendant's 30(b)(6) witnesses, managers, and executives; (3) third party discovery to Defendant's timekeeping and payroll custodians of records, and (4) expert discovery. Finally, Plaintiff

1  would need to prepare for trial, which would require the presentation of percipient and expert witnesses,

2  as well as the consideration, preparation, and presentation of voluminous documentary evidence and

3  the preparation and analysis of expert reports. *Id.*

4    Even if Plaintiff successfully overcame these procedural obstacles, recovery of the damages and

5  penalties previously referenced would also require complete success and certification of all of Plaintiff's

6  claims, a questionable feat in light of developments in wage and hour and class and collective action

7  law as well as the legal and factual grounds that Defendant has asserted to defend this action. *Id.,* ¶ 60.

8  Off-the-clock claims are difficult to certify for class treatment, given that the nature, cause, and amount

9  of the off-the-clock work may vary based on the individualized circumstances of the worker.[10] While

10  Plaintiff is confident that they would establish that common policies and practices give rise to the off-

11  the-clock work for putative Class members, Plaintiff acknowledged that the work was performed by

12  hourly employees holding various job titles and differing pay structures. *Id.* Plaintiff thus recognized

13  that obtaining class certification would present a significant obstacle, with the risk that the putative

14  Class members could only pursue individual actions in the event that certification was denied. *Id.*

15  Certification of off-the-clock work claims is complicated by the lack of documentary evidence and

16  reliance on employee testimony, and Plaintiff would likely face motions for decertification as the case

17  progressed. *Id.*

18    Plaintiff also recognized similar obstacles may hinder class certification and proving their claims

19  on the merits as to Plaintiff's meal and rest break claims. *Id.,* ¶ 61. Given that until April 2021,

20  Defendant did not record meal breaks taken by putative Class members, much of Plaintiff's evidence

21  would need to rely on testimonial evidence. *Id.* Even beyond this time period, Defendant used Kronos'

22  attestation options to ensure that all putative Class members record whether and why not such

23  employees took their meal and rest periods, creating another hurdle Plaintiff would need to face. *Id.*

24  Further, Defendant has produced documents and data supporting its the defense that Defendant has paid

25  30 minutes of work each day for meal periods, whether compliant or not, throughout the Class Period.

26  *Id.* In the event Defendants' evidence proved to be true and Plaintiff is unable to gather sufficient

27

28  _____
[10] *See, e.g., In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

1    testimonial evidence otherwise, Plaintiff's meal and rest break claims could have potentially failed at

2    the class certification stage. *Id.* Given that the substantive damages are largely driven by the alleged

3    off-the-clock work and meal and rest breaks, and that the derivative and penalty claims are tethered to

4    off-the-clock claims, Plaintiff recognized that their potential failure to obtain class certification on the

5    off-the-clock work and meal rest breaks could potentially result in the death knell of their derivative

6    claims. *Id.*

7         Plaintiff would also encounter difficulties in proving Defendant's liability on the merits for

8    similar reasons. *Id.*, ¶ 62.[11] From 2021 to 2022, due to the breach of Defendant's timekeeping processor,

9    Kronos, Defendant relied on handwritten timesheets. *Id.* Plaintiff would face fundamental logistical

10   difficulties in reviewing and analyzing the massive amounts of hard copy records to provide evidence

11   that Defendant, indeed, failed to pay putative Class members wages for all worked hours during that

12   time period. *Id.*

13        As to Plaintiff's PAGA claims, Plaintiff would first need to overcome similar procedural hurdles,

14   including completing substantial amounts of written discovery and depositions. *See id.*, ¶ 63. Unique to

15   PAGA as a result of developing case law, however, Defendant would also likely move to strike

16   Plaintiff's PAGA claims for lack of manageability. *Id.* Such a scenario would likely further delay

17   litigation, however, as the Supreme Court has granted review of *Estrada v. Royalty Carpet Mills, Inc.*,

18   76 Cal.App.5th 685 (2022), to resolve the split of authority created by *Estrada* regarding whether trial

19   courts can strike or limit unmanageable PAGA actions. *See Wesson v. Staples, LLC,* 68 Cal.App.5th

20   746, 766-67 (2021).

21        Plaintiff would further likely need to move for and defend against motions for summary

22   judgment or adjudication, and would have been further required to take their claims to trial. *Id.*, ¶ 64.

23   Trials are inherently risky for all parties. Although Plaintiff believes that he could have been successful

24   in proving these claims, and that Defendant's evidence would not have been as persuasive, a trial on

25

26   _____

     [11] For example, Section 260 of the FLSA reads in relevant part that, in any civil action regarding unpaid

27   compensation, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such
     action was in good faith and that he had reasonable grounds for believing that his act or omission was not a
     violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount

28   thereof." 29 U.S.C. 260. Defendant would no doubt be prepared to submit evidence showing that it had acted in
     good faith and on reasonable grounds that its actions were not in violation of the FLSA, and whether this Court
     agrees with Defendant would be a risk that Plaintiff would necessarily undertake had litigation continued.

the off-the-clock claims and meal and rest periods would have carried a high degree of risk.[12]

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Settlement Class Members. *Id.,* ¶ 65. Such a result will benefit the Parties and the court system. It will bring finality to over two years of arduous litigation and will foreclose the possibility of expanding litigation.

### 5. The Settlement is the Product of Informed, Non-collusive, and Arm's Length Negotiations Between Experienced Counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the Settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl., ¶ 66. The Parties participated in two, full-day mediations before skilled mediators with many years of experience mediating employment matters. *Id.* Plaintiff is represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Settlement Class Members. *Id.*, ¶¶ 41, 67.

### 6. The Class Representative Enhancement Payment is Reasonable and the Class Representative Has Adequately Represented the Class.

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The enhancement payments of up to $7,500 for Plaintiff Salinas is intended to compensate him for the broader release to which he agreed and for the critical roles he played in this case, and the time, effort, and risks – including risks to future employment

---

[12] For example, on the California derivative claims, Defendant would argue that no penalties for waiting-time violations can be awarded unless the failure to pay wages is "willful," an element that Plaintiff acknowledge given Defendant's policies and enforcement would have been difficult to prove. *See* Cal. Lab. Code § 203; 8 C.C.R. 13520 ("[a] willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages were due."); *Smith v. Rae Venter Law Group*, 29 Cal.4th 345, 354 n.2 (2002) (holding that a good faith dispute that any wages are due will preclude an award of waiting time penalties). Defendant would also have argued that an employer's failure to pay wages is not willful unless it reached the standard of "gross negligence or recklessness." *See Amaral v. Cintas*, 163 Cal.App.4th 1157, 1201 (2008).

1   – he undertook in helping secure the result obtained on behalf of the Class. Cottrell Decl., ¶¶ 68, 70-71.

2   Plaintiff's proposed enhancement payment represents only 0.25% of the Maximum Settlement Amount,

3   *Id.,* ¶ 69, well within payments approved in similar cases.[13] In agreeing to serve as a Class

4   representative, Plaintiff formally agreed to accept the responsibilities of representing the interests of all

5   Class Members. *Id.,* ¶ 70. Moreover, Plaintiff agreed to a general release, unlike other Class Members.

6   *Id.,* ¶ 71. Defendant does not oppose the requested payments to the Plaintiff as a reasonable service

7   award. *Id.,* ¶ 72; Settlement, ¶ V. The proposed service award is fair and reasonable, and should be

8   preliminarily approved.

9           **7.  The Requested Attorneys' Fees and Costs are Reasonable and Plaintiff's Counsel Have Adequately Represented the Class.**

10          In their fee motion to be submitted with the final approval papers, Plaintiff's Counsel will request

11  up to a maximum of $1,050,000.00 in fees, representing 35% of the Maximum Settlement Amount,[14]

12  plus reimbursement of costs up $30,000. Cottrell Decl., ¶¶ 73, 77; *see also,* Settlement ¶ VI. Plaintiff's

13  counsel will provide their lodestar information with their fee motion, which will demonstrate the

14  reasonableness of Plaintiff's Counsel's rates. Cottrell Decl., ¶ 74; *see, e.g., Vizcaino v. Microsoft Corp.,*

15  290 F.3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers'

16  investment of time in the litigation, provides a check on the reasonableness of the percentage award").

17          The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total

18  settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D.

19  482, 491-92 (E.D. Cal. 2010). However, the exact percentage varies depending on the facts of the case,

20  and in "most common fund cases, the award exceeds that benchmark." *Id.* at 491 (citation omitted); *In*

21  *re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards

22

---

23  [13] *See, e.g., Greer v. Dick's Sporting Goods, Inc.,* No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS 168923, at *15 (E.D. Cal. Sep. 15, 2020) (approving $100,000 service award representing .003 percent of gross

24  settlement amount in wage and hour settlement where class members were estimated to receive $155 on average); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.,* No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS

25  142331, at *32 (E.D. Cal. Aug. 21, 2019) (approving $10,000 service awards each to two class representatives, which amounted to 0.6 percent of the overall settlement amount of $3,400,000); *Spann v. J.C. Penney Corp.,* 211 F.Supp.3d 1244, 1265 (C.D. Cal. 2016) (awarding service award of $10,000, approximately 100 times average the award and less than 0.25 percent of gross settlement).

26  [14] Although fee awards can be based on the combined value of class and individual settlements prompted by the pendency of an action, as it was here, Plaintiff's fee request here is limited to the Maximum Settlement Amount

27  – the class settlement value – alone. *See, e.g., Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2019 U.S. Dist. LEXIS 237817, at *20 (C.D. Cal. Mar. 22, 2019) (awarding fee award based on combined value of class and individual settlements and citing cases); *Guerrero v. United States Gypsum Co.,* No. 3:21-cv-01502-RBM-JLB, 2022 U.S. Dist. LEXIS 233930, at *5-6, 14, 28 (S.D. Cal. Dec. 30, 2022) (awarding fee award based

28  on combined value of class and individual settlements).

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina PetCare Company,* Case No. 1:21-CV-01140-JLT-CDB

range around 30%")). In California, federal and state courts customarily approve payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions.[15]

Here, there was no guarantee of compensation or reimbursement. Cottrell Decl., ¶ 75. Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendant's vigorous and skillful defense further confronted Plaintiff's counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Plaintiff and his counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class and collective recovery. *Id.* During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Plaintiff's Counsel had to confront and the risks they had to fully absorb on behalf of the Class Members here are precisely the reasons for multipliers in contingency fee cases.

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the case at bar, the result is uncertain. *Id.,* ¶ 76. Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

For these reasons, Plaintiff's counsel respectfully submits that the proposed recovery for fees is reasonable and appropriate. Plaintiff's Counsel also requests reimbursement for their litigation costs. *Id.,* ¶ 78. Plaintiff's Counsel's efforts resulted in an excellent settlement, and the fee and costs award should be preliminarily approved as fair and reasonable.

**D.    Plaintiff and the Collective Members are Similarly Situated and the Settlement Should be Approved as to the Collective.**

---

[15] *See, e.g., Jones, et al. v. CertifiedSafety, Inc.,* Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Soto, et al. v. O.C. Commc'ns, Inc., et al.,* Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.,* No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826, at *4 (approving attorneys' fee award of just under 42% of common fund).

1    Although in the FLSA context, court approval is required for settlements, the Ninth Circuit has

2    not established the criteria that a district court must consider in determining whether an FLSA settlement

3    warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG,

4    2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Most courts in this Circuit, however, first consider

5    whether the named plaintiffs are "similarly situated" to the putative collective members within the

6    meaning of 29 U.S.C. 216(b), and then evaluate the settlement under the standard established by the

7    Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982),

8    which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over

9    FLSA provisions." *Otey v. CrowdFlower, Inc.*, *supra*, at *4. "If a settlement in an employee FLSA suit

10   does reflect a reasonable compromise over issues...that are actually in dispute," the district court may

11   "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*;

12   *Lynn's Food Stores*, 679 F.2d at 1354.

13   All proposed Collective members are also Settlement Class Members, and will only join the

14   proposed Collective – limited to their work in California – if they cash their settlement checks as

15   Participating Class Members. *See* Settlement, ¶¶ II.10, II.16, II.24-25, III, XII. Plaintiff is confident that

16   he has satisfied his burden of making substantial allegations and a modest factual showing Collective

17   members were subject to a common practice or policy that violated the FLSA, as indicated above. *See*

18   *Khanna v. Inter-Con Sec. Sys.*, No. CIV S-09-2214 KJM GGH, 2012 U.S. Dist. LEXIS 137651, at *10

19   (E.D. Cal. Sep. 24, 2012) ("standards for certifying an FLSA class and evaluating the fairness of an

20   FLSA settlement are less stringent than those imposed by Rule 23")). Collective Members are similarly

21   situated because Defendant maintains various common policies and practices as to what work they

22   compensate and what work they do not compensate. Cottrell Decl., ¶ 41.

23   Defendant does not oppose certification of the Collective for settlement purposes and agree to

24   seek this Court's approval thereon. *Id.,* ¶ 42; *see* Settlement, ¶¶ III, XII.  The Court should find that

25   Plaintiff and the proposed Collective members are similarly situated for purposes of preliminary

26   settlement approval.

27   **E.    The Proposed Notice of Settlement is Reasonable.**

28   The Court must ensure that Class Members receive the best notice practicable under the

1    circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v.*

2    *Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any

3    particular procedure but rather requires only notice reasonably calculated "to apprise interested parties

4    of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

5    *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th

6    Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in

7    sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

8    heard.'" *Churchill Village, L.L.C. v. Gen. Elec., supra*, at 575.

9        The Notice of Settlement, attached as **Exhibit A** to the Settlement Agreement, and manner of

10    distribution negotiated and agreed upon by the Parties are "the best notice practicable." Fed. R. Civ. P.

11    23(c)(2)(B). All Class Members have been identified and the Notice will be mailed directly to each

12    Class Member via U.S. mail. Settlement, ¶ XVI.A.2. The proposed Notice is clear and straightforward,

13    and provide information on the nature of the action and the proposed Class, the terms and provisions of

14    the Settlement, and the monetary awards that the Settlement will provide Class Members. *See*

15    Settlement, Ex. A.

16        The proposed class Notice fulfills the requirement of neutrality in class notices. *See* Conte,

17    Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide

18    context for the Settlement Agreement and summarize the terms and conditions of the Settlement,

19    including an explanation of how the settlement amount will be allocated between the Plaintiff, Class

20    Counsel, the Settlement Administrator (ILYM), and the Class Members, in an informative, coherent

21    and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's

22    recommendation that "the notice contain a clear, accurate description of the terms of the settlement."

23    Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004); *see* Settlement, Ex. A.

24        The proposed class Notice clearly explains the procedures and deadlines for requesting exclusion

25    from the Settlement, objecting to the Settlement, the consequences of taking or foregoing the various

26    options available to Class Members, and the date, time and place of the Final Approval Hearing. *Id*.

27    Pursuant to Rule 23(h), the proposed Notices also set forth the amount of attorneys' fees and costs

28    sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will apply for

1  them. *Id.* The Notice clearly states that the Settlement does not constitute an admission of liability by

2  Defendant. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id.*

3  Accordingly, the Notices comply with the standards of fairness, completeness, and neutrality required

4  of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class

5  Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, §

6  21.311; Settlement Notice, § 21.312 (4th ed. 2004).

7          Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Notices.

8  Before mailing, Defendant will provide ILYM a database that contains the names, last known addresses,

9  last known email addresses (if any), and social security numbers of each Class Member, along with the

10 applicable number(s) of workweeks for calculating the respective settlement shares. Settlement, ¶¶

11 XVI.A.1. ILYM will make reasonable efforts to update the contact information in the database using

12 public and private skip tracing methods. *Id.,* ¶ XVI.A.2. Within 15 business days of receipt of the Class

13 List from Defendants, ILYM will mail the Notices to each Class Member. *Id.* With respect to Notices

14 returned as undeliverable, ILYM will re-mail any Notices returned to ILYM with a forwarding address

15 following receipt of the returned mail. *Id.* If any Notice is returned to ILYM without a forwarding

16 address, ILYM will undertake reasonable efforts to search for the correct address, including skip tracing,

17 and will promptly re-mail the Notice to any newly found address. *Id.*

18         Class Members will have 60 days from the mailing of the Notices to opt-out or object to the

19 Settlement. *Id.,* ¶¶ II.5, XVI.A.4, XVI.B.1. Any Class Member who does not submit a timely request to

20 exclude themselves from the Settlement will be bound to the judgment the Court ultimately enters in

21 the case. *Id.,* ¶ XVIA.4. ILYM will provide Class Counsel and Defendant's Counsel with a report of all

22 Settlement payments within 15 days before the final approval hearing. Settlement*,* ¶ XVI.B.2. Because

23 the Notice clearly and concisely describes the terms of the Settlement and the awards and obligations

24 for Class Members who participate, and because the Notice will be disseminated in a way calculated to

25 provide notice to as many Class Members as possible, the Notice should be preliminarily approved.

26 **V.    CONCLUSION**

27         For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion in its

28 entirety.

Date: March 27, 2023                        Respectfully Submitted,

                                            /s/ Carolyn H. Cottrell
                                            Carolyn H. Cottrell
                                            Ori Edelstein
                                            Michelle S. Lim
                                            **SCHNEIDER WALLACE**
                                            **COTTRELL KONECKY LLP**
                                            2000 Powell Street, Suite 1400
                                            Emeryville, California 94608
                                            Telephone: (415) 421-7100
                                            Facsimile: (415) 421-7105

                                            *Attorneys for Plaintiff, the Putative*
                                            *Class and Collective, and the Aggrieved*
                                            *Employees and the State of California*

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina PetCare Company,* Case No. 1:21-CV-01140-JLT-CDB

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court

3  for the United States District Court, Eastern District of California, by using the Court's CM/ECF system

4  on March 27, 2023.

5      I certify that all participants in the case are registered CM/ECF users and that service will be

6  accomplished by the Court's CM/ECF system.

7

8                    /s/ *Carolyn H. Cottrell*
                   Carolyn H. Cottrell

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina PetCare Company,* Case No. 1:21-CV-01140-JLT-CDB