Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Laurel N. Holmes (SBN 308515)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
lholmes@schneiderwallace.com

*Attorneys for Plaintiff, the Putative*
*Class, and the Aggrieved*
*Employees and the State of California*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL SALINAS, on behalf of himself and the Class Members,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ PURINA PETCARE COMPANY;<br><br>Defendant. | Case No.: 1:21-cv-01140-JLT-CDB<br><br>Hon. Jennifer L. Thurston<br>Magistrate: Hon. Christopher D. Baker<br><br>**PLAINTIFFS' NOTICE OF MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        October 1, 2024<br>Time:        9:00 a.m.<br>Ctrm.:       4, 7th Floor<br><br>Filed:        July 26, 2021<br>Trial Date:   None Yet Set |

**TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on October 1, 2024 at 9:00 a.m., before the Hon. Jennifer L. Thurston of the United States District Court, Eastern District of California, Plaintiff Emmanuel Salinas ("Plaintiff") makes a renewed motion to the Court for preliminary approval of the Joint Stipulation of Settlement including as modified by the Amendment to the Class Action Settlement (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn H. Cottrell; the "Amended Settlement,: attached as Exhibit 1 to the accompanying Declaration of Ori Edelstein) as to the class and PAGA action. The Settlement globally resolves all of the claims in these actions on a class and PAGA basis. In particular, Plaintiff moves for orders:

(1)     Granting preliminary approval of the Amended Settlement Agreement as to the Class;

(2)     Conditionally certifying the Class for settlement purposes;

(3)     Approving the proposed schedule and procedure for completing the final approval process for the Settlement as to the Class, including setting the Final Approval Hearing;

(4)     Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as Counsel for the Class;

(5)     Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(6)     Preliminarily appointing and approving Plaintiff Salinas as Class Representative for the Class for purposes of the Settlement;

(7)     Preliminarily appointing and approving ILYM Group, Inc. ("ILYM") as the Settlement Administrator for the Class;

(8)     Approving the Notice of Class Action and PAGA Representative Settlement ("Class Notice," attached as **Exhibit A** to the Amendment to the Class Action Settlement); and

(9)     Authorizing the Settlement Administrator to mail and email the Class Notice to the Class;

(10)     Approving the proposed schedule for completing the settlement process as to the Class:

| Event | Deadline |
|---|---|
| Deadline for Defendant to provide the | Within ten (10) business days after entry of |

| Event | Deadline |
|---|---|
| Settlement Administrator with the Class List | the Preliminary Approval Order. |
| Deadline for the Settlement Administrator to Mail the Class Notice to Settlement Class Members | Within fifteen (15) business days after the Settlement Administrator receives the Class List. |
| Deadline for Settlement Class Members to postmark requests to opt-out or file objections to the Settlement (the "Deadline Date") | Sixty (60) calendar days after the Settlement Administrator has postmarked the Class Notice for mailing to Settlement Class Members, or within fifteen (15) calendar days after the postmark of a Class Notice re-mailed to a corrected address for that Settlement Class Member, whichever is later. |
| Deadline for the Settlement Administrator to provide all counsel with a complete list of all Participating Class Members, of all Opt Outs, and of any written objections | No later than ten (10) calendar days after the Deadline Date. |
| Deadline for filing of the Final Approval Motion | Approximately twenty-five (25) calendar days after the Deadline Date, as provided above. |
| Final Approval Hearing | As provided above. |
| Effective Date | The date on which the District Court's judgment approving the Joint Stipulation of Settlement becomes "Final." The judgement becomes "Final" when the period for appealing or seeking higher court review of the settlement approval and Final Class Judgement has expired, or that any filed appeals or other requests for review have been resolved without right to further appeals or review. |
| Deadline for Defendant to pay the Maximum Settlement Amount and Employer's Share of Taxes to the Settlement Administrator | Within ten (10) business days after the Effective Date. |
| Deadline for Settlement Administrator to make payments under the Settlement to Participating Individuals, the LWDA, Class Representative, Class Counsel, and itself | Within twenty (20) business days after the Effective Date. |
| Check-cashing deadline | One hundred eighty (180) calendar days from the date of issuance of the check. |
| Deadline for the Settlement Administrator to send a reminder notice to Participating Class Members and PAGA employees who have not cashed their checks | Within ninety (90) calendar days from the mailing of the check. |

| Event | Deadline |
|---|---|
| Deadline for the Settlement Administrator to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable. |
| Deadline for the Settlement Administrator to remit uncashed check funds to the Unclaimed Property Fund | As soon as practicable. |
| Deadline for Plaintiff to file a Post-Distribution Accounting Report | As soon as practicable. |

    (11)    Setting a final approval and fairness hearing.

    Plaintiff brings this Motion pursuant to Fed. R. Civ. P. 23(e). The Renewed Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn H. Cottrell filed with the initial Motion, the Declaration of Ori Edelstein filed herewith, and all other records, pleadings, and papers on file in the consolidated and related actions and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Preliminary Approval of Class Action Settlement with his moving papers.

Date: August 16, 2024               Respectfully Submitted,

                                     */s/ Ori Edelstein*
                                     Carolyn H. Cottrell
                                     Ori Edelstein
                                     Laurel N. Holmes
                                     **SCHNEIDER WALLACE**
                                     **COTTRELL KONECKY LLP**
                                     2000 Powell Street, Suite 1400
                                     Emeryville, California 94608
                                     Telephone: (415) 421-7100
                                     Facsimile: (415) 421-7105

                                     *Attorneys for Plaintiff, the Putative*
                                     *Class and Collective, and the Aggrieved*
                                     *Employees and the State of California*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   Updated BACKGROUND.........................................................................................1

III.  TERMS OF THE SETTLEMENT ...........................................................................2

    A. Basic Terms of the Amended Settlement...........................................................2

    B. Amended Class and PAGA Employee Definitions. ...........................................3

    C. Updated Allocation and Awards. .......................................................................3

    D. Updated Scope of Release. .................................................................................4

    E. Settlement Administration. .................................................................................5

IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
    SETTLEMENT AS TO THE CLASS........................................................................5

    A. The Court Should Grant Preliminary Approval of the Settlement as to the Class. .............5

    B. The Class Meets the Requirements for Class Certification. ...............................6

        1.  The State Classes are Numerous and Ascertainable...................................7

        2.  Plaintiff's Claims Raise Common Issues of Fact or Law. ........................7

        3.  Plaintiff Salinas's Claims and Plaintiff Johnson's Claims are Typical of the
        Claims of the Class. .................................................................................7

        4.  Plaintiffs and Class Counsel Will Adequately Represent the Class. ........8

        5.  The Rule 23(b)(3) Requirements for Class Certification are also Met. ...................9

    C. The Settlement Should be Preliminarily Approved as to the Class is Fair,
    Reasonable, and Adequate. ...........................................................................10

        1.  The Terms of the Settlement are Fair, Reasonable, and Adequate.......................10

            a.  The Settlement is the Product of Informed, Non-collusive, and
            Arm's Length Negotiations Between Experienced Counsel. ..................12

            b.  The Amended Settlement No Longer Seeks to Release FLSA
            Claims. .................................................................................................13

            c.  The Parties Agreed to a Fair and Equitable Distribution of the
            Settlement Proceeds Tailored to the Respective Claims of the
            Potential Subclasses. .......................................................................... 14

d.  The Amended Settlement Provides Equitable Distribution of
Allocations Based on Potential Claims of Class Members........................ 15

2.  The Class Representative Enhancement Payments are Reasonable and
Should be Approved. ............................................................................15

3.  The Requested Attorneys' Fees and Costs are Reasonable and Plaintiff's
Counsel Have Adequately Represented the Class. ..................................16

D.  The Proposed Notice of Settlement is Reasonable. .........................................18

V.    CONCLUSION.....................................................................................................20

---

PLAINTIFFS' NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.*, Case No. 1:21-CV-01140-JLT-CDB

1

2

## **TABLE OF AUTHORITIES**

**CASES**

3

*Ahmed v. Beverly Health & Rehab. Servs., Inc.,*
    2018 U.S. Dist. LEXIS 20460, 2018 WL 746393 (E.D. Cal. 2018) ......................................... 11

4

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................................................................... 9

5

6

*Brown v. Papa Murphy's Holdings Inc.,*
    No. C19-5514 BHS, 2022 U.S. Dist. LEXIS 79209 (W.D. Wa. May 2, 2022) ........................ 17

7

*Carter v. Anderson Merchandisers, LP,*
    No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ....................... 12

8

9

*Caudle v. Sprint/United Mgmt. Co.,*
    No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) ....................................... 6

10

*Chastain v. Cam,*
    No. 3:13-cv-01802-SI, 2016 U.S. Dist. LEXIS 52092 (D. Or. Apr. 19, 2016) ........................... 6

11

12

*Duran v. Roshan R.,*
    No. C 09-04536 JW, 2010 U.S. Dist. LEXIS 161797 (N.D. Cal. Sep. 24, 2010) ................. 3, 13

13

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) .................................................................................................................... 18

14

15

*Franco v. Ruiz Food Prods., Inc.,*
    2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 (E.D. Cal. 2012) ..................................... 11

16

*Fry v. Hayt, Hayt & Landau,*
    198 F.R.D. 461 (E.D. Pa. 2000) .............................................................................................. 7, 8

17

18

*Garcia v. Gordon Trucking,*
    2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 (E.D. Cal. 2012) ..................................... 11

19

*Greer v. Dick's Sporting Goods, Inc.,*
    No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS 168923
    (E.D. Cal. Sep. 15, 2020) .......................................................................................................... 16

20

21

*Guerrero v. United States Gypsum Co.,*
    No. 3:21-cv-01502-RBM-JLB, 2022 U.S. Dist. LEXIS 233930
    (S.D. Cal. Dec. 30, 2022) .......................................................................................................... 16

22

23

*Gutierrez v. Stericycle, Inc.,*
    No. LA CV15-08187 JAK (JEMx), 2019 U.S. Dist. LEXIS 237817
    (C.D. Cal. Mar. 22, 2019) .......................................................................................................... 16

24

25

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 6, 7, 11

26

27

*Holmes v. Continental Can Co.,*
    706 F.2d 1144 (11th Cir. 1983) ................................................................................................. 14

28

iii

PLAINTIFF'S NOTICE MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina Petcare Co.,* Case No. 1:21-CV-01140-JLT-CDB

*In re Activision Sec. Litig.*,
    723 F.Supp. 1373 (N.D. Cal. 1989)................................................................. 17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................ 10

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...................................................................... 10

*Jones, et al. v. CertifiedSafety, Inc.*,
    Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) ................ 17

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
    No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ............... 6

*Lusk v. Five Guys Enters. LLC*,
    No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812
    (E.D. Cal. Jan. 22, 2022) ............................................................................. 10

*Ma v. Covidien Holding, Inc.*,
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014)................................................... 11

*Maravilla v. Rosas Bros. Constr.*,
    401 F. Supp. 3d 886 (N.D. Cal. 2019).............................................................. 3

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ..................................................................................... 18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................. 10, 11, 15

*Pena v. Taylor Farms Pac., Inc.*,
    No. 2:13-cv-01282-KJM-AC, 2021 U.S. Dist. LEXIS 45326
    (E.D. Cal. Mar. 10, 2021) ............................................................................ 17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................................................... 18

*Ramirez v. Michael Cookson Constr., Inc.*,
    No. 1:22-cv-01623-SKO, 2023 U.S. Dist. LEXIS 128246
    (E.D. Cal. July 24, 2023).............................................................................. 5

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*,
    No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ............... 17

*Reyes v. CVS Pharmacy, Inc.*,
    No. 1:14-cv-00964-MJS, 2016 U.S. Dist. LEXIS 17180
    (E.D. Cal. Feb. 10, 2016) ............................................................................. 14

*Sanchez v. Martinez,*
    54 Cal. App. 5th 535 (2020)......................................................................... 13

*Satchell v. Fed. Express Corp.*,
    No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ........... 12

*Schiller v. David's Bridal, Inc.*,
  2012 U.S. Dist. LEXIS 80776 (E.D. Cal. 2012) ..................................................... 11

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ..................................................................................... 18

*Slater v. Blackwood*,
  15 Cal.3d 791 (1975) .................................................................................................. 13

*Smith v. Family Video Movie Club, Inc.*,
  311 F.R.D. 469 (N.D. Ill. 2015) ................................................................................... 7

*Soto, et al. v. O.C. Commc'ns, Inc., et al.*,
  Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019)............................ 17

*Spann v. J.C. Penney Corp.*,
  211 F.Supp.3d 1244 (C.D. Cal. 2016).......................................................................... 16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................... 15

*Stovall-Gusman v. W.W. Granger, Inc.*,
  2015 WL 3776765 (N.D. Cal. June 17, 2015) ............................................................ 11

*Tavaglione v. Billings*,
  4 Cal.4th 1150 (1993)................................................................................................... 13

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ................................................................................. 17

*Viceral v. Mistras Grp., Inc.*,
  Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .............. 11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 17

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ......................................................................................... 7

*Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
  No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331
  (E.D. Cal. Aug. 21, 2019)............................................................................................. 16

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................ 10, 11, 12, 17

## STATUTES

Fed. R. Civ. P. 23(a) ......................................................................................................... 6

Fed. R. Civ. P. 23(a)(1)..................................................................................................... 7

Fed. R. Civ. P. 23(a)(2)..................................................................................................... 7

Fed. R. Civ. P. 23(a)(3)..................................................................................................... 7

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 8

Fed. R. Civ. P. 23(b) ............................................................................................... 6

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 6, 9

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 18

Fed. R. Civ. P. 23(e) ..................................................................................... 4, 5, 10

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 6, 10

Fed. R. Civ. P. 23(h) .............................................................................................. 19

Fed. R. Civ. P.  23(a)(2) ........................................................................................... 7

## TREATISES

Conte, Newberg on Class Actions (3rd ed. 1992) ................................................. 19

Manual for Complex Litigation (4th ed. 2004) ................................................. 6, 19

Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004) ............... 19

Newberg on Class Actions, § 8.21 (3rd Ed. 1992) ................................................ 19

## I.  INTRODUCTION

After a year and a half of intensive litigation, including formal discovery, multiple mediations, exhaustive pre-mediation discovery and outreach, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of this class and PAGA action.[1] Plaintiff Emmanuel Salinas ("Plaintiff Salinas") and Plaintiff Fred Johnson ("Plaintiff Johnson") now seek preliminary approval of the Class and PAGA Settlement.

The Action is based on Defendant Nestlé Purina PetCare Company's ("Defendant") alleged violations of federal and state wage and hour laws, resulting in the underpayment of wages and the failure to provide compliant meal and rest periods to hundreds of workers employed by Defendant in any non-exempt hourly or non-exempt salaried California job position at any time during the time period from and including January 29, 2017, through and including February 5, 2023.

The Parties have resolved the claims of approximately 146 similarly situated non-exempt employees, for a total non-reversionary settlement of $3,000,000.00. Based on the terms of the Settlement, Class Members will receive on average $13,000 each. With this proposed Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement provides an excellent benefit to the Class and supports the purposes of the PAGA. in The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully requests that the Court grant the requested approval.

## II.  UPDATED BACKGROUND

The early procedural background, factual background, discovery efforts, and settlement background are explained in detail in Plaintiff Salinas's Motion for Preliminary approval and in this Court's denial of the same and is thus not repeated here. ECF 54 p. 4.

Pursuant to the Settlement, the Parties dismissed the State Action without prejudice immediately following the filing of the FAC in this action. Settlement, ¶ XV.

Following the Court's order denying preliminary approval, the Parties immediately set about engaging in direct negotiations to determine if an amended settlement agreement could be reached or

---

[1] The Joint Stipulation of Settlement and Release ("Settlement") is attached as **Exhibit 1** to the accompanying Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Cottrell Decl.").

if the case should proceed in litigation based on an impasse. On July 1, 2024 the Parties filed a Joint Status Report to the Court and were subsequently granted an additional 30 days to submit this Renewed Motion for Preliminary Approval. On July 30, 2024 although a tentative agreement had been reached by the parties, signatures and briefing required additional time so the Parties submitted a final Joint Stipulation for additional time to submit a renewed motion.

On August 15, 2024 the Parties signed the Amendment to the Class Action Settlement ("Settlement Amendment"). Edelstein Decl., **Exhibit 1**. The Amendment to the Settlement Agreement adds an additional Plaintiff, Fred Johnson, who is a former employee of Defendant Nestle Purina PetCare within the Class Period. It also removes the FLSA waiver and release language for the Class Members, and no longer seeks to create a collective for release of FLSA claims. Finally, it adjusts the *pro rata* allocation to add an additional pay period's worth of settlement allocation to those Class Members who would be potentially eligible to pursue claims for penalties under Labor Code 203. These adjustments fully address the Court's concerns regarding both the typicality and adequacy of the Plaintiff to represent all Class Members, eliminates the concerns over opt-in procedures necessary for releasing FLSA claims, and ensures a fair distribution of the settlement among the Class Members accounting for the potential claims they could pursue.

## III.  TERMS OF THE SETTLEMENT

### A.  Basic Terms of the Amended Settlement.

The Amended Settlement Agreement no longer seeks to release FLSA claims on behalf of a collective. This is the result of direct negotiations to preserve the settlement as to the Class and PAGA action. Under the Amended Settlement Class Members no longer waive and release potential FLSA claims, and instead recognizes that recovery due to the Class Members for violation of State overtime laws would be coextensive with the damages available under the FLSA.[2] The Settlement further affirms that the Settlement Allocation includes compensation for State overtime and minimum wage claims and as such compensates Class Members for overtime and minimum wage owed. This would not prohibit a

---

[2] Although there is a different method for calculating the damages under State and Federal law, where the employee works over 40 hours per week and not over 12 hours per day, as was the case for Class Members here, the calculations are substantially the same.

Participating Class Member from brining a FLSA claim, rather it would provide Defendant with an affirmative defense based on the prohibition against double recovery.[3]

### B.  Amended Class and PAGA Employee Definitions.

The Settlement Class is defined as all persons employed by Defendant in any non-exempt hourly or non-exempt salaried California job position at any time during the time period from and including January 29, 2017, through and including February 5, 2023 (the "Class Period"). Settlement, ¶¶ II.4, II.6, II.10, II.24, III. There are approximately 146 Class members. Cottrell Decl., ¶ 30.

Settlement Class Members – including those who exclude themselves from the Rule 23 portion of the Settlement – during any part of the time period from and including January 29, 2020, through and including February 5, 2023 (the "PAGA Period"), are also considered PAGA Employees. Settlement, ¶¶ II.14, II.15, VIII. There are approximately 105 PAGA Employees. Cottrell Decl., ¶ 30.

### C.  Updated Allocation and Awards.

From the Net Settlement Amount, each Participating Class Member will receive a "Class Member Allocation Amount," which includes *pro rata* shares called a "First Pro Rata Allocation Amount" and a "Second Pro Rata Allocation Amount."  Settlement, ¶ IX.2.

The First Pro Rata Allocation Amount will be calculated based on the number of pay periods worked by a Participating Class Member during the Class Period, and (based on the Amendment to the Settlement) <u>one additional pay period if the Participating Class Member is a former employee</u>. This amount will then be divided by the aggregate number of pay periods worked by all Participating Class Members during the Class Period <u>plus one additional pay period for each Participating Class Member who is a former employee</u>, then multiplied by the Net Settlement Amount. Settlement Amendment ¶ 5(a). To avoid providing those Participating Class Members who previously signed releases in exchange for $1,500 with a double recovery, each such Participating Class Member's First Pro Rata Allocation Amount will be reduced by $1,500, and will total $0 if the resulting amount is calculated to be $0 or less. *See id.*

---

[3] *Maravilla v. Rosas Bros. Constr.,* 401 F. Supp. 3d 886, 898 n.11 (N.D. Cal. 2019) ("The Court can only award damages under one statutory scheme under the general rule barring double recovery." And citing *Duran v. Roshan R.,* No. C 09-04536 JW, 2010 U.S. Dist. LEXIS 161797, at *8 n.5 (N.D. Cal. Sep. 24, 2010) (awarding damages only under Labor Code and not the FLSA).

The Second Pro Rata Allocation Amount will be calculated based on the number of pay periods worked by a Participating Class Member during the Class Period, divided by the aggregate number of pay periods worked by all Participating Class Members during the Class Period, then multiplied by the Net Settlement Amount less the total First Pro Rata Allocation Amount calculated for all Participating Class Members. *Id.*, ¶ IX.2.b.

Each PAGA Employee will receive a share of the PAGA Portion ("Individual PAGA Payment") calculated based on the number of pay periods worked by the PAGA Employee during the PAGA Period, divided by the aggregate number of pay periods worked by all PAGA Employees during the PAGA Period, and then multiplied by the PAGA Portion (i.e., $25,000). *Id.*, ¶ IX.3. Participating Class Members who are also PAGA Employees will receive their Individual PAGA Payments in addition to their Class Member Allocation Amount. *Id.* PAGA Employees who are also Settlement Class Members but opt out, and therefore are not Participating Class Members, will receive only their Individual PAGA Payments. *Id.*

Participating Class Members and PAGA Employees will have 180 days to cash their check. *Id.*, ¶ IX.10. The Settlement Administrator will send a reminder notice to any PAGA Employee or Participating Class Member who has not cashed his or her checks within 90 days after such checks have been mailed. *Id.*, ¶ IX.11. For any check not cashed after 180 days, the Settlement Administrator will stop payment on such check and remit the funds to the Unclaimed Property Fund maintained by the State Controller's Office in the name of the Participating Class Member and/or PAGA Employee who failed to cash his or her check. *Id.,* ¶ IX.10; Cottrell Decl., ¶ 33.

### D.  Updated Scope of Release.

Each Participating Class Member will release and discharge the Released Parties from the Released Class Claims, which include all claims arising in whole or in part, for claims arising from employment by Defendant during the Class Period with respect to wage and hour claims or claims otherwise arising from the facts or legal theories alleged in this Action. Settlement, ¶¶ II.20, XII. The notice language includes an acknowledgement that recovery of FLSA damages for unpaid overtime or unpaid minimum wages would represent double recovery for any claims brought under California law.

Despite this acknowledgement, FLSA claims are not released by the Settlement. Settlement Amendment ¶ 7.[4]

Each PAGA Employee releases and discharges the Released Parties on behalf of the LWDA from all Labor Code or Wage Order violations under the PAGA arising during the PAGA Period, and which derive from the Released Class Claims or could have been alleged under the PAGA in the Action. *Id.* There is no right for PAGA Employees to opt out or otherwise exclude themselves from these Released PAGA Claims. *Id.*

In partial consideration for the Class Representative Enhancement Fees, Plaintiffs also agree to a general release. Settlement, ¶ XIII; *see also, id.,* ¶ V. Releases by Participating Class Members, PAGA Employees, and the Plaintiff, are tethered to the Effective Date. *Id.,* ¶¶ XII, XIII. The "Released Parties" include Defendant and its past or present partners, parents, subsidiaries, or affiliates, and their predecessor or successor entities; any joint employers, alter egos, integrated enterprises; and the past and present directors, officers, representatives, insurers, agents, shareholders, limited or general partners, members, lawyers, and employees of any of such individuals or entities. *Id.*, ¶ II.20.

### E. Settlement Administration.

The Parties agreement as to the Settlement Administration is outlined at length in Plaintiff Salinas's Motion for Preliminary Approval and to some degree in this Court's Order denying the same, and so is not repeated here.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE CLASS

### A. The Court Should Grant Preliminary Approval of the Settlement as to the Class.

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which

---

[4] *Ramirez v. Michael Cookson Constr., Inc.*, No. 1:22-cv-01623-SKO, 2023 U.S. Dist. LEXIS 128246, at *18 (E.D. Cal. July 24, 2023) (holding that there was no duplication of damages sought because plaintiffs did "not seek a damage award under both the FLSA and California law separately, to avoid a double recovery.")

1   evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is

2   presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action*

3   *Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed

4   to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

5       Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court

6   may grant certification for purposes of preliminary approval: (1) that the settlement class meets the

7   requirements for class certification if it has not yet been certified; and (2) that the settlement is fair,

8   reasonable, and adequate. Fed. R. Civ. P. 23 (a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below,

9   this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable,

10  and adequate in accordance with Rule 23(e)(2). Defendant does not oppose certification of the Class

11  for settlement purposes and agree to seek this Court's approval thereon. *See* Settlement, ¶¶ III, XII.

12  Accordingly, the Court should preliminarily approve the Settlement as to the Class.

13              **B.  The Class Meets the Requirements for Class Certification.**

14      A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members

15  individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or

16  defenses of the class representative are typical of the claims or defenses of the class; and (4) the person

17  representing the class is able to fairly and adequately protect the interests of all members of the class.

18  Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief

19  may only be maintained if "the court finds that the questions of law or fact common to class members

20  predominate over any questions affecting only individual members, and that a class action is superior

21  to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

22  23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of employees

23  who have suffered wage and hour violations under the wage and hour laws of California.[5] Likewise,

24  the Class meets all of these requirements.

25  _____

26  [5] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at *7 (N.D.
    Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage

27  violations); *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *14
    (W.D. Wash. Aug. 16, 2006) (certifying Washington Rule 23 class in a case involving off-the-clock,

28  overtime, and meal break violations under Washington law); *Chastain v. Cam*, No. 3:13-cv-01802-SI,

### 1. The State Classes are Numerous and Ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). Here, there are approximately 146 putative Class members who are readily identified from Defendant's payroll records, thereby rendering the class so large as to make joinder impracticable. *See* Cottrell Decl., ¶ 34.

### 2. Plaintiff's Claims Raise Common Issues of Fact or Law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000)("*Fry*"). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Defendant has uniform policies applicable to all Class members as outlined in length in Plaintiff Salinas's Motion for Preliminary Approval and to some degree in this Court's Order denting the same, and so is not repeated here. Plaintiff alleges that the wage and hour violations are in large measure borne of Defendant's standardized policies, practices, and procedures, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. Because these questions can be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied.

### 3. Plaintiff Salinas's Claims and Plaintiff Johnson's Claims are Typical of the Claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are <u>reasonably coextensive</u> with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (emphasis added). Here, Plaintiffs' claims are

---

2016 U.S. Dist. LEXIS 52092, at *29 (D. Or. Apr. 19, 2016) (certifying Oregon Rule 23 class and denying FLSA decertification in a case asserting off-the-clock and unpaid meal breaks); *Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 483 (N.D. Ill. 2015) (certifying Illinois Rule 23 class in a case asserting overtime pay rates failed to include commission payments and off-the-clock for delivering bank deposits).

typical of those of all other Class Members. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case.

Newly added named Plaintiff Johnson is a former employee who was separated from his employment with Defendant during the Class Period. As such Plaintiff Johnson has standing to pursue all penalties alleged and sought as a part of the Class claims, including the claim for waiting time penalties under Labor Code § 203. Thus, the typicality requirement is also satisfied because Plaintiffs jointly have claims that are reasonably coextensive with those of the absent Class Members.[6]

Interviews with putative Class members and review of timekeeping and payroll data further confirm that Plaintiff and other putative Class members were subjected to the same alleged illegal policies and practices to which Plaintiff was subjected. Cottrell Decl., ¶ 36.

### 4. Plaintiffs and Class Counsel Will Adequately Represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry,* 198 F.R.D. at 469. Plaintiffs Salinas and Johnson share the experience of having suffered the majority of the claims for which certification is sought. Between them both, Plaintiff Salinas shares the incentives in line with current employees within the Class and Plaintiff Johnson shares incentives in line with former employees withing the Class. All Class Members fall into one of these two groups and as such through combined representation the Plaintiffs adequately represent the Class.

Plaintiffs' claims are not antagonistic to the claims of Class Members and any potential conflict has been addressed in the apportionment of the Settlement Allocations. In the *pro rata* allocation calculation former employees are awarded an additional amount, equal to a share equivalent of

---

[6] In the Order denying Preliminary Approval this court noted that no employee could have claims typical of both violations of Labor Code 201 and 202 because one requires that the employee quit and the other requires that the employee was terminated, however when it comes to the recovery of penalties for either violations or Labor Code 201 or 202 these groups share a common interest in the same penalty calculation. The only difference is whether that penalty calculation starts on the day of the employee's termination or 72 hours after resignation without notice. On a Class wide basis that is a distinction without a difference where the settlement represents recovery of the Labor Code 203 penalty not actual damages from the violations of Labor Code section 201 or 202.

1   approximately one pay period to account for their potential to successfully assert a claim for Labor

2   Code 203 penalties. Settlement Amendment ¶ 5. Plaintiffs have prosecuted this case with the interests

3   of the Class Members in mind and jointly ensured that the Amended Settlement Agreement and release

4   adequately addressed the interests of the Class and any potential subclass members.

**5.    The Rule 23(b)(3) Requirements for Class Certification are also Met.**

6       Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any

7   questions affecting only individual members" and that a class action is "superior to other available

8   methods for fairly and efficiently adjudicating the controversy."

9       Here, the common questions raised in this action predominate over any individualized questions

10  concerning the Class. Cottrell Decl., ¶ 38. Resolution of the claims hinges on the uniform policies and

11  practices of Defendant, rather than the treatment the putative Class Members experienced on an

12  individual level. *Id*. As a result, the resolution of these alleged class claims would be achieved through

13  the use of common forms of proof, such as Defendant's uniform policies, and would not require

14  inquiries specific to individual class members.

15      Further, the class action mechanism is a superior method of adjudication compared to a multitude

16  of individual suits. *Id.*, ¶ 39. To determine whether the class approach is superior, courts are to consider:

17  (a) the class members' interests in individually controlling the prosecution or defense of separate

18  actions; (b) the extent and nature of any litigation concerning the controversy already begun by or

19  against class members; (c) the desirability or undesirability of concentrating the litigation of the claims

20  in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P.

21  23(b)(3)(A)-(D).

22      Here, the action involves over a hundred workers with similar claims for monetary injury that

23  would be the subject of duplicative discovery and significant expenditure of court resources if

24  prosecuted individually. The issues raised by the present case are much better handled collectively by

25  way of a settlement. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v.*

26  *Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures

27  that workers receive redress for their claims, and avoids clogging the legal system with numerous cases.

28  Cottrell Decl., ¶ 40. Accordingly, class treatment is efficient and warranted for settlement purposes.

**C. The Settlement Should be Preliminarily Approved as to the Class is Fair, Reasonable, and Adequate.**

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("*Officers for Justice*"); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Before making such a finding, the Court must consider whether (1) class representative and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate in light of: (a) the costs, risks, and delay of trial; (b) the effectiveness of any proposed method of distributing relief to the class; (c) the terms of any proposed award of attorney's fees; and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining whether preliminary approval is warranted, doing so often proves useful given the role these factors play in final approval determinations." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS 12812, at *6 (E.D. Cal. Jan. 22, 2022).

In this Court's denial of the initial Motion for Preliminary Approval, the Court focused concern on considerations (2) and (3)(d) above, with particular note as to whether there was a presumption of fairness from "arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of the Court's narrowed concerns these specific factors, are addressed below and after evaluation support that the Settlement is fair, reasonable, and adequate.

**1. The Terms of the Settlement are Fair, Reasonable, and Adequate.**

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec.*

*Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice,* 688 F.2d at 623.[7]

At the overall settlement level, the negotiated non-reversionary Maximum Settlement Amount of $3,000,000.00, in addition to the $81,000 credited under the Settlement for prior Pick-Up Stix settlements, represents approximately 85% of the $3,625,283.75 total that Plaintiff calculated for core claims for unpaid meal and rest premiums and unpaid wages. Cottrell Decl., ¶ 49. When adding the calculated derivative penalties, this settlement amount represents approximately 61% of Defendant's total potential exposure of $5,050,460.81. *Id.* The Net PAGA Amount of $100,000.00 also represents 3.3% of the Maximum Settlement Amount, well within the PAGA settlements previously approved in this district and other California district courts.[8] *See id.*, ¶ 50.

Plaintiffs addressed at length the reasonableness, fairness, and adequacy of the Settlement Amount as a whole in the initial Motion for Preliminary Approval and therefore do not repeat that analysis here. Instead, Plaintiffs now seek to address the Court's concerns about 1) the presumption of reasonableness based on arms-length negotiations, 2) the establishment of a FLSA collective, 3) the fairness of the settlement between subclasses, and 4) the adequacy of the allocations to the class members based on the *pro rata* calculations.

---

[7] *See, e.g., Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

[8] *See, e.g., Ahmed v. Beverly Health & Rehab. Servs., Inc.*, 2018 U.S. Dist. LEXIS 20460, 2018 WL 746393, at *10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement); *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *35-36 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of the total settlement); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement); *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS 160052, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27% of the total settlement).

a.  **The Settlement is the Product of Informed, Non-collusive, and Arm's Length Negotiations Between Experienced Counsel.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."). Additionally, courts have found that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive. *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).

Here, the Settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl., ¶ 66. The Parties participated in two, full-day mediations before skilled mediators with many years of experience mediating employment matters. *Id.* Plaintiff is represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Settlement Class Members. *Id.*, ¶¶ 41, 67.

This Court raised concerns over the inclusion of an FLSA release as part of the proposed collective action in the initial Motion for Preliminary Approval, but that does not align with the truth of the unfolding negotiations. The agreement to initially seek approval for a collective and release of the FLSA claims came from the opposing viewpoints wherein Defendant viewed the inclusion as necessary for a complete settlement of all potential wage and hour claims by the Class and that in Plaintiffs' estimation an FLSA release served only as an extension of the bar against double recovery of damages.

In reaching the terms of the initial Settlement Agreement and the further negotiations needed to achieve the Amended Settlement Agreement Plaintiffs' and Plaintiffs' Counsels' concerns have been maximizing recovery for the Participating Class Members. The sequence of events outlined by this Court in its denial of the Plaintiff's Motion for Preliminary Approval omits a critical aspect of the Parties decision to include the creation of an FLSA collective to include an FLSA release as a part of the

1   resolution of this case, namely that the underlying conduct for the State law claims and the potential

2   FLSA claims for the proposed Class Members relies on the same underlying conduct. As further

3   discussed below, this fact alleviates the concern that the FLSA violations were seemingly not being

4   prosecuted, because the underlying conduct has been the focus of this litigation from the case's

5   inception. Based on the differing approach to the proposed FLSA release, Plaintiffs now hope to cure

6   the misconception that there was any lack of arms-length dealing in developing the Settlement.

### b.  The Amended Settlement No Longer Seeks to Release FLSA Claims.

9   Plaintiff Salinas considered and evaluated the potential FLSA claims and determined that the

10  damages for such overtime and minimum wage violations were recoverable under either State law

11  claims or FLSA claims, but not both. The decision to include FLSA claims in the release represented

12  Plaintiff Salinas's acknowledgement that there exists a bar against double recovery for the same

13  underlying conduct. *Duran v. Roshan R.,* (N.D. Cal. Sep. 24, 2010) No. C 09-04536 JW, 2010 U.S.

14  Dist. LEXIS 161797, at *8  (holding that "[p]laintiff's request for compensatory damages under the

15  FLSA is duplicative of [p]laintiff's recovery of overtime compensation pursuant to California Labor

16  Code § 510."); *Sanchez v. Martinez,* 54 Cal. App. 5th 535, 546 (2020) (holding that where wages are recoverable

17  under multiple legal theories, the unpaid wages constitute but a single harm and quoting the California Supreme

18  Court: "[R]egardless of the nature or number of legal theories advanced by [a] plaintiff, [the plaintiff] is not

19  entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence."

20  *Tavaglione v. Billings,* 4 Cal.4th 1150, 1158 (1993). "Double or duplicative recovery for the same items of

21  damage amounts to overcompensation and is therefore prohibited." *Id.* at p. 1159; see also *Slater v. Blackwood,*

22  15 Cal.3d 791, 795 (1975) ["Even where there are multiple legal theories upon which recovery might be

23  predicated, one injury gives rise to only one claim for relief"].)

24  To address the Court's concern regarding the release of the FLSA claims, the Parties agreed to

25  amend the Settlement to remove the FLSA release language and to no longer seek to certify a collective.

26  Instead, the parties negotiated to include a clarifying statement that identifies that this settlement is

27  intended to compensate Participating Class Members for all overtime wages owed and that recovery of

28  additional sums for such overtime wages through any other legal theory would represent double

recovery. Settlement Amendment ¶ 7. The Amended Settlement Agreement no longer seeks to certify a collective or release any FLSA claims and therefore eliminates any concern over the fairness of an apportionment to an FLSA collective.

### c. The Parties Agreed to a Fair and Equitable Distribution of the Settlement Proceeds Tailored to the Respective Claims of the Potential Subclasses.

The Amended Settlement Agreement allocates the settlement proceeds amongst Settlement Class Members in a manner that recognizes the amount of time that the particular individual was employed by Defendant in the applicable limitations period and the additional potential claim for penalties for former employees.

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *cf. Reyes v. CVS Pharmacy, Inc.,* No. 1:14-cv-00964-MJS, 2016 U.S. Dist. LEXIS 17180, at *19-20 (E.D. Cal. Feb. 10, 2016) (noting equal distribution of settlement to class members **may** be appropriate where plaintiffs face difficulties prosecuting their individual claims)(emphasis added). Rather, although disparities in the treatment of class members may raise an inference of unfairness and/or inadequate representation, this inference can be **rebutted by showing that the unequal allocations are based on legitimate considerations**. *Holmes,* 706 F.2d at 1148.

Here, the allocation method, which is based predominantly on the number of workweeks will ensure that longer-tenured workers receive a greater recovery because they suffered a higher number of violations during their employment. Additionally, an allocation of one additional pay period for former employees, ensures that former employees, who have a potential additional claim for Labor Code Section 203 penalties, are allocated an extra measure of recovery.

Moreover, for Settlement Class Members who were already compensated through separate *Pick-Up Stix* settlements, such individuals' share of the Settlement will be reduced by the $1,500 individual settlement they already received. Settlement, IX.2.a. This allocation was made to ensure that employees are compensated in the most equitable manner. Cottrell Decl., ¶ 55.

1  Plaintiff provides rational and legitimate bases for the allocation method here, and submits that

2  it should be approved.

3  ### d.  The Amended Settlement Provides Equitable Distribution of

4  ### Allocations Based on Potential Claims of Class Members.

5  The adequacy of the allocations to the class members based on the *pro rata* calculations takes

6  into account the proportional value of differing claims between current and former employees.

7  The Settlement amount provides significant compensation to the Settlement Class Members and

8  adjusts the Participating Class Member's award allocation based on the number of work weeks and

9  potential to recover for distinct Labor Code violations. The Settlement provides an excellent recovery

10  well within the reasonable standard when considering the difficulty and risks presented by expanding

11  and uncertain litigation. *Id.*, ¶¶ 53-54.

12  Here, although the Class as a whole experienced similar Labor Code violations during their

13  employment, the availability of waiting time penalties to former employees based on Defendant's

14  failure to pay all wages during employment, means that former employees have the potential to seek an

15  additional day's worth of wages for up to 30 days. As a proportional value of the total settlement

16  recovery, Labor Code 203 claims represent a meaningful amount but would be subject to additional

17  defenses reducing the likelihood of recovery. Based on the additional claim's strength, value, and

18  likelihood of success on a class wide basis, the Parties have agreed to allocate one additional pay

19  period's worth as a share of the settlement to account for the additional potential claim.

20  As such the final settlement amount takes into account the substantial risks inherent in this wage-

21  and hour class action case, as well as the procedural posture of the Actions and the specific defenses

22  asserted by Defendant, many of which are unique to this case. *See Officers for Justice*, 688 F.2d at 623.

23  In light of all of the risks, the settlement amount is fair to the class as a whole and amongst the class

24  members, is reasonable in amount and allocation, and represents an adequate recovery as a settlement.

25  ### 2.  The Class Representative Enhancement Payments are Reasonable and

26  ### Should be Approved.

27  Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton*

28  *v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The enhancement payment of up to $7,500 for Plaintiff

Salinas is intended to compensate him for the broader release to which he agreed and for the critical roles he played in this case, and the time, effort, and risks – including risks to future employment – he undertook in helping secure the result obtained on behalf of the Class. Cottrell Decl., ¶¶ 68, 70-71. The enhancement payment of up to $1,500 for Plaintiff Johnson is intended to compensate him for the broader release to which he agreed and for the critical roles he played in this case, and the time, effort, and risks he undertook – including a specific risk to future employment by being named in a searchable federal case – in helping secure the result obtained on behalf of the Class.

Plaintiffs' proposed enhancement payments represent only 0.3% of the Maximum Settlement Amount, well within payments approved in similar cases.[9] In agreeing to serve as a Class Representative, Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class Members, including the subgroups of Class Members who were former employees. Cottrell Decl., ¶ 71. Moreover, Plaintiffs agreed to a general release, unlike other Class Members. *Id.* Defendant does not oppose the requested payments to the Plaintiffs as a reasonable service award. *Id.* ¶ 72; Settlement, ¶ V. The proposed service award is fair, reasonable, and is representative of the respective commitments each Plaintiff has undertaken and should be preliminarily approved.

### 3. The Requested Attorneys' Fees and Costs are Reasonable and Plaintiff's Counsel Have Adequately Represented the Class.

In their fee motion to be submitted with the final approval papers, Plaintiff's Counsel will request up to a maximum of $1,050,000.00 in fees, representing 35% of the Maximum Settlement Amount,[10]

---

[9] *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-CV-01063-KJM-CKD, 2020 U.S. Dist. LEXIS 168923, at *15 (E.D. Cal. Sep. 15, 2020) (approving $10,000 service award representing .003 percent of gross settlement amount in wage and hour settlement where class members were estimated to receive $155 on average); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.,* No. 1:17-cv-00853-DAD-EPG, 2019 U.S. Dist. LEXIS 142331, at *32 (E.D. Cal. Aug. 21, 2019) (approving $10,000 service awards each to two class representatives, which amounted to 0.6 percent of the overall settlement amount of $3,400,000); *Spann v. J.C. Penney Corp*., 211 F.Supp.3d 1244, 1265 (C.D. Cal. 2016) (awarding service award of $10,000, approximately 100 times average the award and less than 0.25 percent of gross settlement).

[10] Although fee awards can be based on the combined value of class and individual settlements prompted by the pendency of an action, as it was here, Plaintiff's fee request here is limited to the Maximum Settlement Amount – the class settlement value – alone. *See, e.g., Gutierrez v. Stericycle, Inc*., No. LA CV15-08187 JAK (JEMx), 2019 U.S. Dist. LEXIS 237817, at *20 (C.D. Cal. Mar. 22, 2019) (awarding fee award based on combined value of class and individual settlements and citing cases); *Guerrero v.*

plus reimbursement of costs up $30,000. Cottrell Decl., ¶¶ 73, 77; *see also*, Settlement ¶ VI. *see, e.g.,*

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which

measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of

the percentage award").

      The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total

settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D.

482, 491-92 (E.D. Cal. 2010). However, the exact percentage varies depending on the facts of the case,

and in "most common fund cases, the award exceeds that benchmark." *Id.* at 491 (citation omitted); *In

re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards

range around 30%")). In California, federal and state courts customarily approve payments of attorneys'

fees amounting to one-third of the common fund in comparable wage and hour class actions.[11] Where,

as here there is an exceptional result for the Class Members, a further upward adjustment is warranted.

*Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282-KJM-AC, 2021 U.S. Dist. LEXIS 45326, at *13

(E.D. Cal. Mar. 10, 2021) (finding 35% fee award to be reasonable because "[c]ounsel accepted the

representation on a contingency basis when the outcome was uncertain and litigation risky"); *Brown v.

Papa Murphy's Holdings Inc.*, No. C19-5514 BHS, 2022 U.S. Dist. LEXIS 79209, at *8 (W.D. Wa.

May 2, 2022) (increasing benchmark to 31.5% partially because "counsel undertook the class action on

a purely contingent basis").

      Here, there was no guarantee of compensation or reimbursement. Cottrell Decl., ¶ 75. Rather,

counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks

were front and center. *Id.* The challenges that Plaintiff's Counsel had to confront and the risks they had

---

*United States Gypsum Co.*, No. 3:21-cv-01502-RBM-JLB, 2022 U.S. Dist. LEXIS 233930, at *5-6, 14, 28 (S.D. Cal. Dec. 30, 2022) (awarding fee award based on combined value of class and individual settlements).

[11] *See, e.g., Jones, et al. v. CertifiedSafety, Inc.,* Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Soto, et al. v. O.C. Commc'ns, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826, at *4 (approving attorneys' fee award of just under 42% of common fund).

1    to fully absorb on behalf of the Class Members here are precisely the reasons for multipliers in

2    contingency fee cases. Plaintiff's Counsel intends to support the fee request with further briefing and a

3    lodestar crosscheck in the motion for final approval.

4        For these reasons, Plaintiff's counsel respectfully submits that the proposed recovery for fees is

5    reasonable and appropriate. Plaintiff's Counsel also requests reimbursement for their litigation costs.

6    *Id.,* ¶ 78. Plaintiff's Counsel's efforts resulted in an excellent settlement, and the fee and costs award

7    should be preliminarily approved as fair and reasonable.

8                **D.  The Proposed Notice of Settlement is Reasonable.**

9        The Court must ensure that Class Members receive the best notice practicable under the

10   circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v.*

11   *Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any

12   particular procedure but rather requires only notice reasonably calculated "to apprise interested parties

13   of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

14   *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th

15   Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in

16   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

17   heard.'" *Churchill Village, L.L.C. v. Gen. Elec., supra*, at 575.

18       The Notice of Settlement, attached as **Exhibit 2** to the Declaration of Ori Edelstein filed

19   herewith, reflects the changes identified in **Exhibit A** to the Amended Settlement Agreement, and

20   manner of distribution negotiated and agreed upon by the Parties are "the best notice practicable." Fed.

21   R. Civ. P. 23(c)(2)(B). For clarity, the proposed Notice now submitted as Exhibit A to the Amendment

22   to the Class Action Settlement Agreement, removed the release language associated with FLSA Claims

23   and does not create the opportunity to opt in to a FLSA collective.

24       All Class Members have been identified and the Notice will be mailed directly to each Class

25   Member via U.S. mail. Settlement, ¶ XVI.A.2. The proposed Notice is clear and straightforward, and

26   provide information on the nature of the action and the proposed Class, the terms and provisions of the

27   Settlement, and the monetary awards that the Settlement will provide Class Members. *See* Settlement,

28   Ex. A.

The proposed class Notice fulfills the requirement of neutrality in class notices. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the Amended Settlement Agreement and summarize the terms and conditions of the Settlement, including an explanation of how the settlement amount will be allocated between the Plaintiff, Class Counsel, the Settlement Administrator (ILYM), and the Class Members, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Manual for Complex Litigation, Settlement Notice, § 21.312 (4th ed. 2004); *see* Settlement Amendment ¶ 8, Exhibit A.

The proposed class Notice clearly explains the procedures and deadlines for requesting exclusion from the Settlement, objecting to the Settlement, the consequences of taking or foregoing the various options available to Class Members, and the date, time and place of the Final Approval Hearing. *Id.* Pursuant to Rule 23(h), the proposed Notices also set forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will apply for them. *Id.* The Notice clearly states that the Settlement does not constitute an admission of liability by Defendant. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id*. Accordingly, the Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all Class Members receive the Notices. Before mailing, Defendant will provide ILYM a database that contains the names, last known addresses, last known email addresses (if any), and social security numbers of each Class Member, along with the applicable number(s) of workweeks for calculating the respective settlement shares. Settlement, ¶¶ XVI.A.1. ILYM will make reasonable efforts to update the contact information in the database using public and private skip tracing methods. *Id.,* ¶ XVI.A.2. Within 15 business days of receipt of the Class List from Defendants, ILYM will mail the Notices to each Class Member. *Id.* With respect to Notices returned as undeliverable, ILYM will re-mail any Notices returned to ILYM with a forwarding address

following receipt of the returned mail. *Id.* If any Notice is returned to ILYM without a forwarding address, ILYM will undertake reasonable efforts to search for the correct address, including skip tracing, and will promptly re-mail the Notice to any newly found address. *Id.*

Class Members will have 60 days from the mailing of the Notices to opt-out or object to the Settlement. *Id.*, ¶¶ II.5, XVI.A.4, XVI.B.1. Any Class Member who does not submit a timely request to exclude themselves from the Settlement will be bound to the judgment the Court ultimately enters in the case. *Id.*, ¶ XVIA.4. ILYM will provide Class Counsel and Defendant's Counsel with a report of all Settlement payments within 15 days before the final approval hearing. Settlement, ¶ XVI.B.2. Because the Notice clearly and concisely describes the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notice will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notice should be preliminarily approved.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion in its entirety.

Date: August 16, 2024                    Respectfully Submitted,


                                        */s/ Ori Edelstein*
                                        Carolyn H. Cottrell
                                        Ori Edelstein
                                        Laurel N. Holmes
                                        **SCHNEIDER WALLACE**
                                        **COTTRELL KONECKY LLP**
                                        2000 Powell Street, Suite 1400
                                        Emeryville, California 94608
                                        Telephone: (415) 421-7100
                                        Facsimile: (415) 421-7105

                                        *Attorneys for Plaintiffs, the Putative*
                                        *Class, and the Aggrieved*
                                        *Employees and the State of California*

PLAINTIFFS' NOTICE MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina PetCare Company,* Case No. 1:21-CV-01140-JLT-CDB

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court

3   for the United States District Court, Eastern District of California, by using the Court's CM/ECF system

4   on August 16, 2024.

5      I certify that all participants in the case are registered CM/ECF users and that service will be

6   accomplished by the Court's CM/ECF system.

7

8                                        */s/ Ori Edelstein*_____
                                         Ori Edelstein

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
*Salinas v. Nestlé Purina PetCare Company,* Case No. 1:21-CV-01140-JLT-CDB