**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMMANUEL SALINAS, on behalf of himself and the Class Members,<br><br>Plaintiff,<br><br>v.<br><br>NESTLÉ PURINA PETCARE COMPANY,<br><br>Defendant. | Case No. 1:21-cv-01140 JLT CDB<br><br>ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. 62) |

Emmanuel Salinas and Fred Johnson assert that Nestlé Purina PetCare Company[1] failed to comply with wage-and-hour laws arising under the California Labor Code, the California Business & Professions Code, and the Fair Labor Standards Act. (Doc. 54 at 5.) Plaintiffs seek preliminary approval of the settlement reached in this action. Specifically, Plaintiffs seek: (1) preliminary approval of the Amended Settlement Agreement as to the Class; (2) conditional certification of the proposed settlement class; (3) appointment of Salinas and Johnson as the class representatives; (4) appointment of the firm of Schneider Wallace Cottrell Kim LLP[2] as class counsel; (5) preliminary approval of class counsel's request for attorneys' fees and costs; (6)

---

[1] Based upon the stipulation of the parties, the Court dismissed Nestlé USA, Inc., as a defendant prior to the filing of the first amended class action complaint. (Docs. 31, 32.)

[2] The firm Schneider Wallace Cottrell Konecky LLP recently changed its name to Schneider Wallace Cottrell Kim LLP. (Doc. 68.) The firm's address and contact information remains unchanged. (*Id*.)

1

approval of the class notice and method of delivery to the Class; (7) appointment of ILYM Group, Inc. as the settlement administrator; and (8) scheduling for the settlement process and final approval of the proposed schedule, including setting the Final Approval Hearing. (Doc. 62 at 2–4.) For the reasons set forth, the motion is **DENIED**.

## I.    BACKGROUND

In this Court's order denying Plaintiff's initial motion for preliminary approval of the class settlement, the Court described the facts in detail and will not reiterate them here. (*See* Doc. 54 at 2–6.) Instead, this Court will summarize the key facts and procedural history as it relates to the present motion.

This action is based on Defendant's alleged violations of federal and state wage-and-hour laws, resulting in the underpayment of wages and the failure to provide compliant meal and rest periods to hundreds of workers employed by Defendant in any non-exempt hourly or non-exempt salaried California job position at any time during January 29, 2017 through February 5, 2023. (Doc. 62 at 11.) The Parties have resolved the claims of approximately 146 similarly situated non-exempt employees, for a total non-reversionary settlement of $3,000,000.00. (*Id*.) Based on the terms of the Settlement, Class Members will receive on average $13,000 each. (*Id*.)

Emmanuel Salinas is a current employee, and Fred Johnson is a former employee, both employed by the Defendant during the class period.[3] In the first amended class action complaint, Salinas alleges in relevant part that Defendant "routinely requires" employees "to perform substantial work off-the-clock and without compensation." (Doc. 50 at 4, ¶ 16.) Salinas asserts that, "prior to clocking in for the start of [a] shift," he and the putative class members were required "to wait in line, [] go through temperature checks and [] answer COVID-19 screening questionnaires." (*Id.*) Salinas asserts that this time "goes unrecorded and therefore uncompensated." (*Id.*) Salinas further alleges Defendant requires donning and doffing personal

---

[3] On August 15, 2024, the parties signed an Amendment to the Class Action Settlement, which added Fred Johnson as an additional class representative. (Doc. 62 at 12; *see id*. at 26 ("In agreeing to serve as a Class Representative . . .").) Plaintiffs added Johnson to address this Court's concerns regarding Salinas's lack of standing to bring claims for penalties under Cal. Lab. Code §§ 201, 202, 203, as Salinas is not former employee but rather a current employee. (*See id*. at 17; *see also* Doc. 54 at 16–17.) However, Plaintiffs fail to specify whether Johnson was fired or quit from his position and instead only indicate that he "was *separated* from his employment with Defendant." (Doc. 62 at 18 (emphasis added).)

protective equipment "before the shift and after their shift, *i.e.*, before clocking in and after clocking out." (*Id.* at 4–5, ¶ 17 (emphasis omitted).) He reports that even if employees clock in early and then don the protective equipment, Defendant "still does not compensate them until the actual starting time of their scheduled shift." (*Id.* at 5, ¶ 17.) Consequently, Salinas contends that the "time spent donning and doffing also goes unrecorded and therefore uncompensated." (*Id.*) He asserts that these COVID-19 and "donning and doffing" practices are implemented "across all Defendant['s] facilities throughout California." (*Id.* at 5–6, ¶ 22.)

In addition, Salinas alleges that Defendant "engaged in a policy and/or practice of rounding time worked." (Doc. 50 at 5, ¶ 19.) Specifically, Defendant "implemented a policy and/or practice until approximately August 2022 of requiring [Salinas] and putative Class members to arrive and clock in for work 15 minutes in advance of their start times, but automatically rounded up such clock in times to . . . [their] start times for purposes of pay." (*Id.*) Salinas contends "this rounding policy and/or practice resulted in the underpayment of wages." (*Id.*) He further contends Defendant "regularly fail[ed] to provide . . . complaint meal breaks." (Doc. 50 at 6, ¶ 24.) Namely, Defendant "routinely denied meal breaks" because: (1) the company "does not authorize, permit, and/or make available timely and full off-duty meal breaks" and (2) the employees "are often too busy with work during the day to have time to take bona fide meal breaks." (*Id.*, ¶ 25.) Salinas asserts that on "the rare occasions" when Defendant paid the premium payments for missed, untimely, or shortened meal breaks, they were "not paid timely or at Plaintiff's and Class members' regular rate of pay." (*Id.*, ¶ 24.) Similarly, he contends Defendant does not "provide[] the timely, full, and required rest breaks required by California law," and "fails to make the full, required premium pay at the employee's regular rate." (*Id.* at 6–7, ¶ 28.) According to Salinas, Defendant applies these meal and rest breaks policies at all its facilities in California. (*Id.* at 7, ¶ 29.)

Defendant also suffered "a breach that affected the Kronos payroll system between approximately December 2021 to April 2021 that Defendant used to record hours and wages." (Doc. 50 at 5, ¶ 18.) As a result of the breach, Salinas and putative class members were underpaid, and Defendant "failed to timely and accurately issue Plaintiff and putative Class

members the correct payment for the hours of work that they have labored." (*Id.*) Salinas asserts the wage statements were inaccurate as they "do not include payment for all hours worked, including minimum wages and overtime, and premium pay for missed meal breaks." (*Id.* at 7, ¶ 31.) Finally, Salinas contends that Defendant "failed to pay all owed wages to departing putative Class members within the time limits imposed by Labor Code §§ 201–203." (Doc. 50 at 20, ¶ 101; *see also id.* at 7, ¶ 32.)

The FAC includes the following causes of action: (1) failure to pay all hours worked in violation of Cal. Lab. Code § 204; (2) failure to pay minimum wages in violation of Cal. Lab. Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1; (3) failure to pay overtime wages in violation of Cal. Lab. Code § 510; (4) failure to authorize and permit meal and rest periods in violation of Cal. Lab. Code §§ 226.7 and 512; (5) failure to provide timely and accurate itemized wage statements in violation of Cal. Lab. Code § 226; (6) failure to provide timely pay to departed employees in violation of Cal. Lab. Code §§201–203; (7) unlawful business practices, in violation of Cal. Bus. & Prof. Code §§ 17200 *et. seq.*; (8) penalties pursuant to Section 2699(a) of the Private Attorney Generals Act; (9) penalties pursuant to Section 2699(f) of the Private Attorneys General Act; and (10) violations of the Fair Labor Standards Act. (Doc. 50 at 1, 11–27.)

The parties executed the "Joint Stipulation of Settlement and Release" on March 27, 2023. (Doc. 51-1 at 24–54.) That same day, the parties stipulated to dismiss the state court action due to the pending settlement, including the filing of the FAC. The Alameda Superior Court approved the stipulation and dismissed the complaint without prejudice. On March 27, 2023, Salinas filed a motion for preliminary approval of the class action settlement, which Defendant did not oppose or otherwise respond to.[4] (Doc. 51.)

On April 19, 2024, this Court denied the initial motion for preliminary approval of the class settlement without prejudice because it could not certify the class. (Doc. 54 at 17, 22.) This Court explained that because Salinas asserted claims under Cal. Lab. Code §§ 201, 202, 203—for

---

[4] The Settlement indicated that "the Parties agree that Plaintiff and Defendant will *jointly* request that the District Court enter the Preliminary Approval Order." (Doc. 51-1 at 44, § XV (emphasis added).) However, the "Notice of Motion" clearly indicates that "Salinas . . . moves the Court for preliminary approval of the Joint Stipulation of Settlement." (Doc. 51 at 2.) As a result, Defendant had an opportunity to oppose the motion, as provided in Local Rule 230(c).

which he lacked standing and did not suffer injury as a current employee—there was a lack of typicality and adequacy in his representation. (*Id*. at 15–17.) This Court further noted its concerns regarding the FLSA collective. Specifically, (1) doubts regarding fairness of the FLSA collective due to Salinas' decision to settle FLSA claims without a prior intent to litigate such claims, which points towards collusion; (2) adequacy of the opt-in procedure for class members to release their FLSA claims because the cashing of a check is insufficient to satisfy FLSA's written consent requirement; and (3) an inability to assess fairness in the settlement amount allocated to the FLSA claims because Plaintiffs failed to specify what percentage of the settlement is for resolution of FLSA claims. (*See id*. at 17–22.)

On August 15, 2024, the parties signed an Amendment to the Class Action Settlement, which (1) added former employee Fred Johnson as an additional Plaintiff; (2) removed the FLSA waiver and release language; (3) no longer seeks to create a collective for release of FLSA claims; and (4) adjusts the *pro rata* allocation to add an additional pay period's worth of settlement allocation to those Class Members who would be eligible to pursue claims for penalties under Cal. Lab. Code § 203. (Doc. 62 at 12.) Plaintiff claims that these adjustments "fully address the Court's concerns regarding both the typicality and adequacy of the Plaintiff to represent all Class Members, eliminates [] concerns over opt-in procedures necessary for releasing FLSA claims, and ensures a fair distribution of the settlement among the Class Members." (*Id*.) On August 16, 2024, Plaintiff filed a renewed motion for preliminary approval of the class settlement. (Doc. 62.) On August 20, 2024, Defendant's filed a brief in support of and joining the request for preliminary approval of the amended class settlement. (Doc. 64.)

## II.    THE PROPOSED AMENDED SETTLEMENT

The Court outlined the proposed settlement in length in its April 2024 order denying Plaintiff's initial motion for preliminary approval of the class settlement. (*See* Doc. 54 at 6–12.) Accordingly, this Court will only outline the terms of the amended settlement. These amendments are in addition to the amendments previously submitted on February 28, 2024.[5] (*See* Doc. 53.)

---

[5]    On February 28, 2024, the parties filed a joint stipulation to amend the "Joint Stipulation of Settlement and Release." (Doc. 53.) The parties stipulated to the following changes:

The parties stipulated the following change to the introductory paragraph:

> This Amended Joint Stipulation of Settlement and Release (the "Joint Stipulation of Settlement") is made and entered into by and among: (a) Plaintiff Emmanuel Salinas ("Salinas") and Fred Johnson ("Johnson") (jointly as "Plaintiffs"), on behalf of themselves and each member of the "Settlement Class" and on behalf of all of the "PAGA Employees" (each as defined below); and (b) Defendant Nestlé Purina PetCare Company. ("Defendant")

(Doc. 62-1 at 4; *see also* Doc. 51-1 at 25.) The parties also stipulated to change Section V to state:

> Plaintiffs will apply to the District Court for approval of a class representative enhancement award for Plaintiff Salinas in the amount of not more than Seven Thousand Five Hundred Dollars and No Cents ($7,500.00) and for Plaintiff Johnson in an amount of not more than One Thousand Five Hundred Dollars and No Cents ($1,500.00) ("Class Representative Enhancement Fees").

(Doc. 62-1 at 4; *see also* Doc. 51-1 at 30–31.)

The parties further agreed that all references to Plaintiff throughout the Settlement Agreement shall be amended to say "Plaintiffs" and agreed that all such terms apply to both

---

> (1) Section VII of the Settlement shall be revised to include the following sentence: The Settlement Administrator shall also set up a website for the Settlement, which will provide contact information for Class Counsel and the Settlement Administrator and will allow Settlement Class Members to view the Class Notice (in generic form), this Settlement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement. The Settlement website shall include Class Counsel's filed application for approval of reasonable attorneys' fees at least two weeks prior to the Deadline Date. The Settlement Administrator will provide a preview of the proposed website to Class Counsel and Defendant's counsel, who must approve the website before it goes live and also must approve any modifications to the website.
> (2) Section XVII shall also be revised to provided that the Settlement Administration Costs to be paid from the Maximum Settlement Amount shall be $10,800 rather than $10,050.
> (3) The Settlement Notice (Exhibit A to the Settlement), the Proposed Order Granting Preliminary Approval of the Settlement (Exhibit B to the Settlement), and the Proposed Judgment of Final Approval of Class Action and PAGA Representative Action Settlement (Exhibit C to the Settlement) shall reflect the revised settlement administration costs of $10,800.

(Doc. 53.)

Though the parties indicate that Section XVII shall be revised, the Court notes that this may have been in error as Section VII, not Section XVII, discusses Settlement Administration Costs. (*See* Doc. 51-1 at 32, 48.) The Court also notes that the amended Class Action Notice, attached as redlined Exhibit A (Doc. 62-1 at 9–15), fails to reflect the Feb. 2024 amended settlement administration cost of $10,800. (*See id.* at 11; *see also* Doc. 53 at 2–3.) Finally, the Class Action Notice also fails to include the updated firm name of Class Counsel. (*See* Doc. 62-1 at 15.) Should the parties seek renewed settlement approval in the future, these errors **SHALL** be corrected.

6

Plaintiffs, and all references to a Class Representative Enhancement Fee or Award shall be deemed to refer to both Enhancement Fees as defined above. (Doc. 62-1 at 4.) Section XIII and Section XIV are further amended to include both Plaintiffs such that each Plaintiff "will be deemed to provide the general release of the Released Parties and representations set forth in that Section."[6] (Doc. 62-1 at 5; *see also* Doc. 51-1 at 40–43.) The first paragraph of Section XV is amended as follows:

> Plaintiff shall promptly prepare, and the Parties shall stipulate to the Plaintiff's filing of, a Second Amended Class Action and PAGA Complaint in the Action (the "Amended Complaint") to add Plaintiff Fred Johnson. The form of such stipulation and of the Amended Complaint must be separately agreed by the Parties.

(Doc. 62-1 at 5; *see also* Doc. 51-1 at 43.)

Because the contemplated PAGA letter has already been sent, the following language from the first paragraph of Section XV is removed:

> Plaintiff shall also prepare for approval of Defense Counsel a supplemental letter under Labor Code section 2699.3 describing in reasonable detail the PAGA claims to be released under this Joint Stipulation of Settlement which have not previously been described in the PAGA letter sent by Plaintiff, and in particular to include the claims identified above and the PAGA Employees who are salaried non-exempt, and after such approval Plaintiff shall send the supplemental letter to the LWDA.

(Doc. 62-1 at 5; *see also* Doc. 51-1 at 43.) The parties further agree that Subsection (2)(a) of Section IX regarding Payments to Participating Class Members shall be amended to include the following underlined portions:

> A preliminary pro rata share, the First Pro Rata Allocation Amount, will be calculated for each Participating Class Member as follows: (i) the number of pay periods each respective Participating Class Member worked in a Job Position during the Class Period, plus one

---

[6] Under Section XIII, the two named Plaintiffs agree to release additional claims than those identified for all other class members—namely, claims which could have arisen during the course of their employment with Defendant, not just those claims constrained to the facts alleged in the FAC. (*See* Doc. 51-1 at 40–42.) Claims released by Salinas and Johnson, but not class members, include any claims for violations of Title VII of the Civil Rights Act, fraud, promises without intent to perform, breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination, retaliatory discharge, negligent or intentional infliction of emotional distress, misrepresentation, and violations of California's Fair Employment and Housing Act. (*See id.* at 41.) However, Section XIII also provides that the two named Plaintiffs do not agree to release certain enumerated claims. (*See id.* at 42.)

> additional pay period if the Participating Class Member is a former employee; divided by (ii) the aggregate number of pay periods worked by all Participating Class Members in a Job Position during the Class Period plus one additional pay period for each Class Member who is a former employees; then multiplied by (iii) the Net Settlement Amount, and (iv) if applicable, then subtracting $1,500. Certain Settlement Class Members signed releases solicited by Defendant in exchange for a payment of One Thousand Five Hundred Dollars and No Cents ($1,500.00) each. For such Participating Class Member who signed such a release, step (iv) in this subparagraph (a) will be performed. If after performing step (iv) in this subparagraph (a), such a Participating Class Member has a preliminary pro rata calculation of $0 or less, Such Participating Class Member's First Pro Rata Allocation Amount shall be $0.

(Doc. 62-1 at 6 (emphasis in original); *see also* Doc. 51-1 at 34–35.)

Paragraph two of Section XII is further amended to remove language on the FLSA collective[7] and to instead state the following:

> As of the Effective Date, each Participating Class Member affirms that the Class Member Allocation Amount received shall be deemed sufficient to cover damages for overtime wages and minimum wages owed for all hours worked, including in an amount available pursuant to claims, penalties, liabilities, actions, and causes of action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), known and unknown. Participating Class Members acknowledge that any subsequent action for recovery of overtime wages or minimum wages would represent double recovery based on the Settlement Allocation received for the Released Class Claims.

(Doc. 62-1 at 6–7; *see also* Doc. 51-1 at 39.) Finally, the Class Notice is also amended as noted in the attached redlined Exhibit A.[8] (Doc. 62-1 at 7; *see also id*. at 9–15.)

---

[7] The prior language regarding the FLSA collective stated: "Participating Class Members who cash, deposit, or otherwise negotiate checks or otherwise obtain the proceeds for their Class Member Allocation Amount shall be deemed to have opted into a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), and to have released each of the Released Parties from any and all claims, penalties, costs, expenses, attorneys' fees, liabilities, damages, and actions or causes of action of whatever kind or nature under the FLSA, known and unknown, which derive from any of the foregoing Released Class Claims. Checks to Participating Class Members shall include a notation that the cashing of the checks constitutes such an opt-in and effectuates these FLSA releases." (Doc. 51-1 at 39.)

[8] The Joint Amendment also indicates that the parties agree to remove the last sentence of Section XII which states, "Participating Collective Members are additionally bound by the release they provide under the Amended Joint Stipulation of Settlement." (*See* Doc. 62-1 at 6–7.) However, upon review of Section XII, no such sentence exists. (*See* Doc. 51-1 at 38–40.) Additionally, the parties agreed to modify the title of Section XII from "Releases by Participating Class Members, Participating Collective Members, and Paga Employees" to "Release by Participating Class Members and PAGA Employees." (Doc. 62-1 at 6; *see also* Doc. 51-1 at 38.) Again, upon review of Section XII, the title already states "Releases by Participating Class Members and PAGA Employees." (Doc. 51-1 at 38.)

## III.    PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id*. (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

### A.    Conditional Certficiation of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Plaintiffs seek certification of a Settlement Class defined as: "all persons employed by Defendant in any non-exempt hourly or non-exempt salaried California job position at any time during the time period from and including January 29, 2017, through and including February 5, 2023." (Doc. 62 at 13; *see also* Doc. 51-1 at 28–30 §§ II(4), II(6), II(10), II(24), III–IV.)

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155–56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156. As explained in this Court's order denying the initial motion for settlement approval, the numerosity and commonality requirements are satisfied. (*See* Doc. 54 at 14–15.) Accordingly, this Court will only address typicality and adequacy of representation, considering the proposed joinder of Plaintiff Johnson.

              1.     Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations and citations omitted).

Plaintiffs contend that the typicality requirement is satisfied because their claims are "typical of those of all other Class Members" in that they were all "subjected to the same alleged illegal policies and practices." (Doc. 62 at 18.) Plaintiffs further contend that Johnson "has standing to pursue all penalties alleged and sought as a part of the Class claims, including the claim for waiting time penalties under Labor Code § 203." (Doc. 62 at 18.) In other words, the proposed joinder of Johnson cures Salinas' lack of standing to represent class members' claims arising out of Cal. Lab. Code §§ 201–203. (*See id.*; *see also* Doc. 64 at 5.) Yet, Plaintiffs fail to specify whether Johnson was fired or quit, and cite no authority for the proposition that Johnson, a former employee, can bring claims under *both* Cal. Lab. Code § 201 and § 202, (Doc. 62 at 18), despite this Court's clear remarks indicating otherwise. (*See* Doc. 54 at 16 n.6 (citing *Perez v. DNC Parks & Resorts at Sequoia*, No. 1:19-cv-00484-DAD-SAB, 2020 WL 4344911, at *8 (E.D. Cal. July 29, 2020) ("plaintiff could not have both resigned and been terminated at the same time").)

Instead, Plaintiffs argue that "when it comes to the recovery of penalties for either

violations o[f] Labor Code 201 or 202 these groups share a common interest in the same penalty calculation. The only difference is whether that penalty calculation starts on the day of the employee's termination or 72 hours after resignation without notice. On a [c]lass wide basis that is a distinction without a difference where the settlement represents recovery of the Labor Code 203 penalty . . ." (Doc. 62 at 18 n.6.) The Court disagrees.

An employee is entitled to waiting-time penalties when their employer willfully fails to pay wages owed under California's prompt payment provisions, irrespective of whether they were fired or quit. *See McLean v. State of California*, 1 Cal.5th 615, 619 ("An 'employer' that 'willfully fails to pay' in accordance with sections 201 and 202 'any wages of an employee who is discharged or who quits' is subject to so-called waiting-time penalties of up to 30 days' wages.") (citing Cal. Lab. Code § 203(a)). While "[t]he statutory deadlines for making payment differ depending on whether the employment is terminated voluntarily or involuntarily, [] the [employer's] obligation to make prompt payment does not." *Id*. at 622.

However, that does not mean that Johnson satisfies the typicality requirement under Rule 23(a). Indeed, contrary to Plaintiffs assertions, it is unclear whether Johnson "shares a common interest in the same penalty calculation." (*See* Doc. 62 at 18 n.6.) This is because "[t]he law establishes different payment deadlines depending on the manner of departure." *Hartstein v. Hyatt Corp.*, 82 F.4th 825, 829 (9th Cir. 2023) (citing *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal.5th 93 (2022)). "In contrast to employees who are discharged and whose wages are 'due and payable immediately,' the wages of an employee who 'quits his or her employment . . . shall become due and payable not later than 72 hours thereafter.'" *Id*. at 829 n.5 (citing Cal. Lab. Code §§ 201, 202, respectively).

As the Ninth Circuit explained, a named plaintiff does not satisfy the typicality requirement when "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [him]." *Hanon*, 976 F.2d at 508 (internal citations and quotations omitted). That is precisely the issue here. Plaintiffs allege that because Johnson was "separated" from employment, he has standing to sue for penalties on behalf of similar class claims. (*See* Doc. 62 at 18.) However, if Johnson *quit* without adequate advance notice, then

11

Defendant would not be liable for penalties under § 203 unless and until Defendant failed to pay wages *after* the "72 hour" point of separation. *See* Cal. Lab. Code § 202. If that were the case, Defendant would have a unique defense against Johnson, which would *not* be typical of class claims for those who were *fired* and entitled to wages "immediately." *See* Cal. Lab. Code § 202; *see also Hanon*, 976 F.2d at 508 (finding that the named plaintiff failed to satisfy Rule 23(a)'s typicality requirement because his unique factual situation subjected him to a unique defense not typical of those defenses which may be raised against proposed class members). The difference in time as to when the penalty calculation begins to accrue may provide Defendant with a unique defense but may also affect the overall sum of recovery.[9] As such, the Court finds that the typicality requirement is not satisfied.

2.   Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020). Importantly, when a named plaintiff lacks standing to assert a claim "that may be available and advantageous to the absent putative class members," there is a conflict of interest between the plaintiff and the class. *See In re Stec Inc. Securities Litig., No. 09-1304,* 2012 WL 6965372, at *6 (C.D. Cal. Mar. 7, 2012).

As this Court explained in its prior order, "an employee who was *discharged* is unable to state a claim under Section 202, and an employee who *quits* cannot state a claim under Section 201." (Doc. 54 at 16 n.6.) Plaintiffs do not indicate whether Johnson quit or was fired. (Doc. 62 at 18.) In any event, Johnson cannot bring claims for penalties under both statutory provisions and

---

[9] For instance, assuming the employer fails to pay prompt wages as of the due date, an employee who is fired begins accruing penalties immediately as of the first day of nonpayment, versus an employee who quits without advance notice does not begin accruing penalties until the fourth day of nonpayment. *See* Cal. Lab. Codes §§ 201, 202.

12

thus lacks sanding to assert a claim that is otherwise available to putative class members. *See e.g.*, *Perez*, 2020 WL 4344911, at *8 ("Their only allegations . . . do not mention whether plaintiff [] resigned or was terminated . . . '[P]laintiff cannot seek relief under both §§ 201 and 202, as plaintiff could not have both resigned and been terminated at the same time.'") (internal citations omitted); *Barajas v. Blue Diamond Growers, Inc.*, No. 1:20-cv-0679-JLT-SKO, 2022 WL 1103841, at *18 (E.D. Cal. Apr. 13, 2022) (finding that "each of the named plaintiffs lack[ed] standing to state a claim based upon Section 202 for wages due" because all plaintiffs were discharged and did not quit); *Moreno v. Castlerock Farming and Transport, Inc.*, No. 1:12-cv-0556-JLT-CDB, 2025 WL 2799487, at *18 (E.D. Cal. Oct. 1, 2025). Plaintiffs cite no authority to the contrary. (*See* Doc. 62 at 18 n.6; Doc. 64.) Thus, Plaintiffs Johnson and Salinas fail to satisfy the adequacy requirement.[10] In sum, the request to conditionally certify the settlement class defined above is **DENIED**.

### B.      Evaluation of the Modified Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit identified several factors for the Court to evaluate whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). The Federal Rules now also identify "specific factors to

---

[10]  Plaintiffs argue that "any potential conflict has been addressed in the apportionment of the Settlement Allocations" in that "former employees are awarded an additional amount, equal to a share equivalent of approximately one pay period to account for their potential to successfully assert a claim for Labor Code 203 penalties." (Doc. 62 at 18–19; *see also* Doc. 62-1 at 6.) However, that still does not address Johnson's lack of standing to bring claims for penalties under both sections 201 and 202.

consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). In relevant part, Rule 23(e) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3);
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24. "The goal of amended Rule 23(e) is to focus the district court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at *5 (C.D. Cal. June 8, 2021) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes). The Ninth Circuit determined the revised Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at 1026. Nevertheless, the Ninth Circuit also instructs courts to examine the prior factors "comprehensively." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

In its prior order denying the initial motion for preliminary settlement approval, this Court explained at length its concerns regarding the FLSA collective—namely, the sincerity of including the FLSA claim in the settlement, the valuation of the FLSA claims, and the opt-in procedure for releasing the FLSA claims. (Doc. 54 at 17–22.) In response, Plaintiffs indicate that these defects have been cured because the "Amended Settlement Agreement no longer seeks to certify a collective or release any FLSA claims." (Doc. 62 at 24.) Instead, the "parties negotiated to include a clarifying statement that identifies that this settlement is intended to compensate Participating Class Members for all overtime wages owed and that recovery of additional sums for such overtime wages through any other legal theory would represent double recovery." (*Id*. at

23–24.) The specific language used in the amended settlement is as follows:

> As of the Effective Date, each Participating Class Member affirms that the Class Member Allocation Amount received shall be deemed sufficient to cover damages for overtime wages and minimum wages owed for all hours worked, including in an amount available pursuant to claims, penalties, liabilities, actions, and causes of action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), known and unknown. Participating Class Members acknowledge that any subsequent action for recovery of overtime wages or minimum wages would represent double recovery based on the Settlement Allocation received for the Released Class Claims

(Doc. 62-1 at 7 (emphasis added).)

The Court takes issue with the underlined language as it appears to be a disguised attempt to release the FLSA claims.[11] While Plaintiffs contend that this modified language no longer releases any FLSA claims, (Doc. 62 at 14–15), the Court disagrees. In essence this language indicates that by virtue of receiving settlement funds—presumably in the form of a check—each participating class member will no longer have an entitlement to damages under the FLSA (e.g., "the Class Member Allocation Amount received shall be deemed sufficient to cover damages . . . pursuant to . . . causes of action under the Fair Labor Standards Act"). (Doc. 62-1 at 7.) This provision suggests that, in exchange for receiving a settlement payment, putative class members agree to relinquish their right to damages under the FLSA. The Court addresses this issue in two parts.

First, as a threshold matter, the Court reiterates that the cashing of a check to opt-in to an FLSA collective and release FLSA claims fails to satisfy FLSA's written consent requirements. (Doc. 54 at 22); *see e.g., Smothers v. NorthStar Alarm Services, LLC*, No. 2:17-cv-00548-KJM-

---

[11] Defendant's briefing in support of Plaintiff's renewed motion for preliminary settlement approval argues that FLSA claims can be released by opting-in through a check, or without any opt-in at all, (Doc. 64 at 7–9), even though this Court has already rejected that argument. (*See* Doc. 54 at 22 ("Courts have repeatedly determined the cashing of a check to opt-in to an FLSA collective fails to satisfy the FLSA's requirement of written consent.").) It's unclear why Defendant would rehash this issue when the parties "no longer seek to certify a collective or release any FLSA claims." (*See* Doc. 62 at 24.) If anything, Defendant rehashing this issue suggests a desire to justify the very language that this Court takes issue with. Indeed, the briefing states: "defense counsel do not like to leave loose ends. Although FLSA claims are almost certainly extinguished where plaintiff recovers under state wage and hour law, defense counsel prefer to avoid any lingering uncertainty of an FLSA claim by formally releasing them. That was the intent of Defendant here—merely to confirm formally what is almost certainly true in practice—that the FLSA claims are extinguished by the double recovery bar." (Doc. 64 at 6–7.)

KJN, 2019 WL 280294, at *10 (E.D. Cal. Jan. 22, 2019) (finding an obvious deficiency in the FLSA notice, indicating that "[b]y signing, depositing, and cashing this check," class members opt-in to the collective action and agree to release their FLSA claims because it was inconsistent with FLSA's written consent requirement codified in 29 U.S.C. § 216(b)); *id*. at 11 (collecting cases which have rejected similar opt-in by settlement check proposals).

Defendant primarily relies on *Amaro* and *Cotter* to argue to the contrary. *See Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 539–541 (Cal. App. 4th Dist. 2021); *Cotter v. Lyft, Inc.*, No. 13-cv-04065-VC, 2017 WL 1033527, at *1–2 (N.D. Cal. Mar. 16, 2017). In *Amaro*, the court found that FLSA's written opt-in requirement did not apply to a wage-and-hour class settlement, despite the inclusion of an FLSA release indicating that all FLSA claims would be released upon cashing the settlement check. *Amaro*, 69 Cal. App. 5th at 540. The court explained, "This is not an FLSA action. [Plaintiff] did not assert an FLSA claim for other employees to join. And nothing in the statue suggests it applies to a class settlement of state law claims that also releases potential FLSA claims based on the same allegations." *Id*.

Similarly, in *Cotter*, the court granted final approval of a class settlement in a wage-and-hour class action that also released FLSA claims. The court explained that claims under the FLSA were "not brought in this case" and that the "language of section 216 [cannot] be read to preclude a release of FLSA claims to settle a lawsuit asserting state law claims." *Cotter*, 2017 WL 1033527, at *1, 2 ("In other words, there is no greater reason to prevent Rule 23 class settlements from releasing unasserted FLSA claims than there is to prevent those settlements from releasing other unasserted claims that arise from the facts of the case."). However, this case does not raise purely state law claims. Instead, Plaintiffs assert an FLSA claim "on behalf of those [c]lass members who are deemed to provide consent to be named in this action." (Doc. 50 at 26–27.) As explained in this Court's prior order, the parties seemingly amended the complaint to add the FLSA claim for the purpose of settling it. (*See* Doc. 54 at 19–20.)

Defendant also cites two cases from the Eastern District of California as having approved the check endorsement process as an appropriate FLSA opt-in in a state wage-and-hour class and FLSA collective settlement. (Doc. 64 at 9); *cf. Cavazos v. Salas Concrete Inc.*, No. 1:19-cv-

00062-DAD-EPG, 2022 WL 506005, at *3, 20, 22 (E.D. Cal. Feb. 18, 2022); *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902-DAD-SKO, 2020 WL 5095885, at *2, 19 (E.D. Cal. Aug. 28, 2020). However, these cases did not analyze the precise issue before this Court—namely, whether the check-cashing method complies with FLSA's requirement of "consent in writing to become such a party . . . filed in the court in which such action is brought." 29 U.S.C. § 216(b); *see Smothers*, 2019 WL 280294, at *11 (rejecting a similar argument because the cases plaintiffs cited as approving the proposed check method of opting-in did so with "no citation whatsoever to § 216(b)'s opt-in language").

Second, the existence of a potential bar against double recovery does not justify the inclusion of the proposed modified language. The Court generally agrees that there is a bar against double recovery. *Maravilla v. Rosas Brothers Construction, Inc.*, 401 F. Supp. 3d 886, 898 n.11 (N.D. Cal. 2019) ("The [c]ourt does not separately address [plaintiff's] California Labor Code overtime claim because it entirely duplicates his FLSA overtime claim. The [c]ourt can only award damages under one statutory scheme under the general rule barring double recovery."); *see also Duran v. Roshan R. Inc.*, No. C 09-04536 JW, 2010 WL 11640152, at *4 (N.D. Cal. Sept. 24, 2010); *Duarte v. MZR Inc.*, No. C 09-00479 JW, 2010 WL 11586755, *6 n.10 (N.D. Cal. July 8, 2010). However, it is unclear whether the California Labor Code claims *in this case* entirely duplicate the FLSA claims and vice versa. Where recovery under one theory does not entirely duplicate recovery under the other, courts require parties to determine an appropriate offset to the overall damages award. *See Maravilla*, 401 F.Supp.3d at 898 n.11 ("[A]lthough [plaintiff's] [California] Labor Code minimum wage claim does not entirely duplicate his FLSA minimum wage claim, the parties will be required to meet and confer to determine the amount by which the judgment must be reduced to avoid double recovery."). This is because a plaintiff is entitled to the calculation that provides the higher award. *See Duarte*, 2010 WL 11586755, at *6 ("Plaintiff's recovery shall be limited to whichever statute, [Cal. Lab. Code] Section 510 or the FLSA, provides the higher award.").

The parties argue that the bar against double recovery applies to Plaintiffs' minimum wage and overtime claims because "recovery on the more generous California state law wage and

17

hour claims almost never leaves anything to recover under the FLSA." (Doc. 64 at 6; Doc. 62 at 23.) Plaintiffs bring claims for minimum wage, overtime, and liquidated damages under California and Federal law. (*See* Doc. 50 at 13–15, 26–27.) What the parties fail to mention however is that the damage calculation differs depending on the statutory scheme, which naturally affects the overall sum of recovery. For example, the calculation for liquidated damages differs such that the liquidated damage provision under the FLSA seems to provide greater recovery than under California law. *See Maravilla*, 401 F. Supp. 3d 886, 898 n.12.

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional* amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added); *Maravilla*, 401 F. Supp. 3d 886, 897 (awarding the total sum of $8,865.88 for unpaid FLSA overtime and minimum wage as well as an additional $8,965.88 in liquidated damages for a grand total of $17,731.76). However, California law seems to only award liquidated damages for minimum wage violations. *See* Cal. Lab. Code § 1194.2 ("In any action . . . to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. *Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation*.") (emphasis added); *see also Hudson v. Regency Air, LLC*, No. G062534, 2024 WL 5134850, at *7 (Cal. App. 4th Dist. Dec. 17, 2024). Therefore, it is unclear whether the claims under California law entirely duplicate the FLSA claims and why the inclusion of the above proposed provision is justified.[12]

---

[12] Defendant argues that in *Jefferson*, this Court approved a settlement agreement that provided no recovery for plaintiff's FLSA overtime claim because "double recovery for both a FLSA claim and a California overtime claim is generally not allowed." (Doc. 64 at 6.) However, Defendant inaccurately represents the holding in that case. There, the parties themselves believed that the FLSA claim did not warrant payment because it was likely barred by the statute of limitations and the rule against double recovery. *Jefferson et al. v. MEC Dev., LLC*, No. 1:17-cv-01394, 2019 WL 5209149 at *2 (E.D. Cal. Oct. 16, 2019). As such, "the settlement agreement provides no payment to [p]laintiffs for their FLSA overtime claim." *Id*. However, unlike here, the settlement did not include a provision indicating that settlement

In conclusion, the Court has doubt as to the fairness of the settlement. The modified settlement language speaks in absolute (e.g., "any subsequent action for recovery of overtime wages or minimum wages *would represent double recovery*") when it is unclear whether the California claims indeed provide a higher award. Further, the modified language seemingly releases putative class members' right to sue for damages under the FLSA without an adequate opt-in procedure (e.g., "the Class Member Allocation Amount received *shall be deemed sufficient to cover damages . . . pursuant to . . . causes of action under the Fair Labor Standards Act*"). (*See* Doc. 62-1 at 7 (emphasis added)); *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1185 (E.D. Cal. 2018) ("[A] district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purpose of the FLSA.") (citations and quotations omitted). Accordingly, the Court **DENIES** preliminary settlement approval at this time.

## IV.    CONCLUSION AND ORDER

In failing to adequately address this Court's concerns as indicated in its prior order, (*see* Doc. 54), this Court **ORDERS**: The renewed motion for preliminary approval of the class action settlement (Doc. 62) is **DENIED** without prejudice.[13]

IT IS SO ORDERED.

   Dated:   **April 14, 2026**

_____
UNITED STATES DISTRICT JUDGE

---

proceeds will cover all damages under to the FLSA. *Id*. Nor did this Court rely on the double recovery theory when approving the settlement. *Id*. at *3 (finding that the settlement terms were fair because the FLSA overtime claim was weak since it was barred by the two-year statute of limitations and there was no indication that defendant's conduct was willful to qualify for the three-year limitations period).

[13] At this juncture, the parties may choose to dismiss the FLSA claims and Cal. Lab. Code §§ 201–203 claims without prejudice to the putative collection. Otherwise, parties will need to address and correct the issues discussed in this order. This may include establishing an adequate opt-in procedure for joining the FLSA collective and for releasing the FLSA claims. *See Smothers*, 2019 WL 280294, at *12 ("As other courts have noted, it appears one way the parties may correct this deficiency is by directing putative FLSA Group members to send opt-in forms to the settlement administrator and then having plaintiffs file those opt-in forms with this court.") If the parties choose not to release the FLSA claims, then this may include modification to the settlement terms which clearly indicates that the FLSA claims *will not* be released by virtue of receiving settlement funds, but that any future recovery may be offset by the settlement payments to the extent it constitutes double recovery. This may also include clarifying whether (1) Plaintiff Johnson was fired or quit and how he serves as an adequate class representative for claims under *either* Cal. Lab. Code §§201 *or* 202; and (2) adding another class representative to the extent Johnson is deficient.

19